Dale *v.* Continental Insurance Co.

DALE *v.* CONTINENTAL INSURANCE CO.

*(Jackson. May 20, 1895.)*

1. INSURANCE. *Nonpayment of premium works forfeiture.*

Failure to pay an installment of premium at maturity will defeat the assured's recovery for a loss that occurred during his default, where both the policy and the installment notes provide that the policy shall lapse upon default in payment of premium. (*Post, pp. 37-46.*)

Cases cited and approved: 63 N. Y., 160; 3 Hill, 161; 52 Mich., 158; 6 L. R. A., 96, 97; 83 Ky., 580; 19 Mich., 451; 6 W. Va., 508; 35 Iowa, 582.

2. SAME. *Waiver of condition.*

Mere failure of an insurance company to reply to a notification by the insured that he, at some indefinite time in the future, will pay an installment of premium about to become due, the nonpayment of which will, by the terms of the policy, suspend its operation during default, will not constitute a waiver of such provision. (*Post, p. 46.*)

3. SAME. *Same.*

Keeping for six days money sent to pay a past-due premium on an insurance policy which, by its terms, is suspended by default, and will not be revived until the assured has received a receipt from the company's agent, will not waive the forfeiture, where the policy also provides that the condition as to the receipt cannot be waived except in a specified way, and there is nothing to show a waiver of the latter condition. (*Post, pp. 46-52.*)

4. SAME. *Same.*

A written provision that the conditions of a policy of insurance shall not be waived, except by a certain officer of the company, may itself be waived by parol. (*Post, pp. 48-52.*)

Cases cited and approved: Ins. Co. *v.* McCrea, 8 Lea, 513; 65 N. Y., 195; 13 Wall., 222; 33 Mich., 153; 96 U. S., 234, 242: 55 Miss., 47; 95 U. S., 326; 57 Vt., 520.

Dale *v.* Continental Insurance Co.

5. SUPREME COURT. *No reversal for immaterial error.*

Conflicting instructions as to what would constitute a waiver of conditions in an insurance policy, will not require reversal of a judgment in favor of the insurer for breach of conditions, if the evidence all tends to show that there was no waiver. (*Post, p. 52.*)

FROM SHELBY.

Appeal in error from Circuit Court of Shelby County. L. H. ESTES, Judge.

SMITH & TREZEVANT for Dale.

CARROLL & PEREZ for Insurance Co.

McALISTER, J. This is a suit upon a policy of fire insurance, commenced in the Circuit Court of Shelby County. There was a verdict and judgment in favor of the insurance company. Plaintiff appealed and has assigned errors. The policy in suit was issued by the Continental Insurance Company, from its home office in Chicago, and insured the firm of W. H. Dale & Co. against loss or damage by fire, upon certain articles of personalty, to the amount of $2,175, for a term of five years, commencing November 4, 1891, and expiring November 1, 1896. At the date of the application the assured executed their promissory note for $78.80, payable to the Continental Insurance Company, at its office in Chicago, in equal installments—viz., $19.70, on

---

---

November 1, 1892; $19.70, on November 1, 1893; $19.70, on November 1, 1894 : $19.70, on November 1, 1895. It should have been stated that the first premium was paid in cash November 14, 1891, when the policy was delivered, and the installment note for $78.80 executed for balance, payable as already stated.

It is provided in the policy, in regard to the premium, viz.: "But it is expressly agreed that this company shall not be liable for any loss or damage that may occur to the property herein mentioned while any promissory note or obligation, or thereof, given for the premium, remains and unpaid."

The installment note contained this stipulation, to wit : "And it is hereby further agreed that, in case of nonpayment of any one of the installments herein named at maturity, this company shall not be liable for loss or damage during such default, and the policy for which this note is given shall lapse unless payment is made to this company in New York or to the western department, at Chicago; and, in the event of nonsettlement for the time expired, as per terms on short rates, the whole amount of installments remaining unpaid on said policy may be declared earned, due, and payable, and may be collected by law. Given in payment for a policy of insurance. (Signed) W. H. Dale & Co."

The policy provided that "the notes must be paid to the Continental Insurance Company, at its office

in Chicago, Ill., or its office in New York, or to an authorized person having such note in possession for collection. The company may collect by suit or otherwise the premium note or notes, and a receipt from the office of the company must be received by the assured before there can be a revival of the policy, which shall, in no event, carry the insurance beyond the original term.'' It was further provided in the policy that ''no agent or employe of this company, or any other person than the general manager of the western department, at Chicago, Ill., shall have power or authority to waive or alter any of the terms or conditions of this policy, or to make indorsement hereon, and all agreements by the general manager must be signed by him.''

These provisions all become important in determining the question whether there had been a forfeiture of the policy for nonpayment of premium prior to the loss incurred, and the further question whether the alleged forfeiture was waived. The fire occurred on the ninth of November, 1892, and plaintiff sustained a loss amounting to $868.75. The installment due November 1, 1892, had not been paid by the assured at the date of the fire. The contention on behalf of the company is that, the fire having occurred while the plaintiff was in default for nonpayment of premium, there is no liability. It is insisted, however, on behalf of the plaintiff, that the stipulations avoiding the policy for nonpayment of premium were waived by the company. The facts

upon which the waiver is claimed are the following,
namely : On October 18, 1892, J. J. McDonald, the
general manager of the company at Chicago, mailed
a notice to plaintiffs advising them that the second
installment of their insurance premium would mature
November 1–4, 1892. On October 31, the plaintiffs
wrote to the company stating, viz.: "Our policy,
375,391, the premium, $19.70, is due in November.
*We will remit as soon as we can sell some cotton and
lumber.*" Dale testifies that he mailed this letter at
Tipton on the same day it was written, and proves,
by the assistant postmaster, that the mail from Tip-
ton would reach Chicago in one day. On November
9 the company answered Dale's letter, stating, viz.:
"We are in receipt of your letter in regard to the
above policy, and, in reply, would state that it
would be advisable to make the remittance spoken
of in your letter to us at an early date, thereby
*reviving* the insurance, and causing no uneasiness to
yourselves in this case." This letter was written on
the very day the fire occurred, and was received by
Dale November 11. He testifies that he supposed,
from the fact of not hearing from the company
earlier, in reply to his letter of October 31, that
his request for delay had been granted, as, other-
wise, he could have borrowed the money and sent
it forward.

On November 16, Dale & Co. forwarded, by ex-
press, notice of the fire, and inclosed $20 to pay
the past-due installment of premium. The $20 was

received by the company November 22, and returned November 28, upon the ground that the policy was not in force when the loss was sustained.

The first question presented, then, is, whether the nonpayment of the installment of premium, due November 1, 1892, invalidated, or, rather, suspended the policy. That such should be the result of nonpayment of any part of the premium is expressly stipulated, both in the face of the policy and of the installment note. In the case of *Roehur* v. *Knickerbocker Fire Ins. Co.*, 63 N. Y., 160, Folger, J., said : "It is, however, well settled that, on the failure of the insured to pay the premium on a policy like this, at the time therein stipulated therefor, it becomes lapsed and void. It is then no longer a contract enforcible against the insurers. If the premium was not paid when the day for payment came, the policy was void, for the parties to it have said that so it shall be. The forfeiture results from the nonpayment alone and for no other act. The payment is a condition precedent which must be kept or the policy falls. It is a rule of common law that, if the terms of the contract violate no law of public policy and have been freely entered into, a strict and exact compliance with them may be insisted upon. *Beadle* v. *Shenango Mutual Insurance Co.*, 3 Hill, 161. Nor did the fact that the defendant took from the insured the note alter this rule in this case. The defendant was not required to make demand for payment of the note, and, on

refusal to pay, to declare the policy void. It lapsed *per se* upon the failure to pay the note at maturity, for the same agreement and intention of the parties are expressed in the note as are expressed in the policy. By the latter, the omission to pay the annual premium shall cause the policy to be void. By the policy, too, the same effects follow for a failure to pay at maturity any note given for premium. By the note itself the policy is to be void in case the note is not paid at maturity, according to the contract in the policy."

In the case of *McIntyre* v. *Mich. State Ins. Co.*, 52 Mich., 158, the policy contained the following condition, to wit: "It is expressly agreed that the company shall not be liable for any loss or damage that may accrue to the property herein mentioned, while any promissory note or obligation, or *part thereof*, given for the premium, remains due and unpaid." The Court held that, both by the terms of the policy and the note, there was no liability upon the part of the company.

In the later case of *Robertson* v. *Continental Insurance Co.* (Michigan), "it appeared that the installment note was past due from February 1, 1886; that on March 30, 1886, it was sent by defendant company to the First National Bank of Port Huron, Mich., for collection. On the ninth of October, 1886, two days after the fire, the plaintiff called at the bank and took up the note, and the proceeds of the note were sent by the bank to the defendant at

Dale *v.* Continental Insurance Co.

Chicago. Immediately after the defendant became advised of the fact that the note had remained unpaid until after the fire occurred, it returned the money to plaintiff, who admitted he received it.''

Long, J., said: ''The case falls within the ruling of this Court in *McIntyre* v. *Michigan State Insurance Co.*, *supra*. The stipulation was one which the company had a right to make. It was inserted in the policy, and the language of it was also embraced in the note. It was not claimed there was any fraud, misrepresentation, or concealment in procuring the policy to be taken with this clause inserted in the policy. The plaintiff was aware that the policy and note contained this clause. . . By the terms of the policy, it is evident that the note was not given or received as payment of the premium. The policy was to remain valid and in force up to the time the note became due, and if the note was not then paid the policy was to lapse. This is the plain meaning of the terms of the policy. There is no force in the other suggestions. By the terms of the policy, the note was payable at the office of the company in Chicago, or at its offices in New York, or to any authorized person having such note in possession for collection. The plaintiff made no effort to pay it until after the fire occurred, though it had been in the bank there from the March previous. It is apparent that, if he had been as diligent in search for his note before the fire as after, he would have had no difficulty in finding it and

making payment in time to have kept his policy alive. As it is, he is bound by the contract which he has made." 6 Lawyers' Repts. Annotated, 96–7. See, also, *Blackaby* v. *Cont. Ins. Co.*, 83 Ky., 580; *Williams* v. *Albany City Ins. Co.*, 19 Mich., 451; *Muhleman* v. *National Ins. Co.*, 6 W. Va., 508; *Wal-rous* v. *Insurance Co.*, 35 Iowa, 582.

It is insisted, however, by counsel for plaintiff in error, that there was a waiver of the forfeiture or suspension of the policy for nonpayment of installment due November 1–4, 1892. This supposed waiver is based upon the failure of the company to reply promptly to plaintiff's letter of October 31, in which it was stated, viz.: "We will remit as soon as we can sell some cotton and lumber." Counsel insist that a prompt reply by the company, declining any indulgence, would have enabled plaintiff to have forwarded premium in time to have reached Chicago on the fourth, the last day of grace, and certainly by the ninth, when the fire occurred. The company, it will be remembered, had, on October 18, mailed notice to plaintiff that his installment premium would mature November 1–4. Plaintiff waits, before replying, until October 31, and then notifies the company, "We will remit as soon as we can sell some cotton and lumber." There was no request for any indulgence, but a mere promise that, at some indefinite time, they would make a remittance. No duty devolved upon the company to make any reply whatever to such a communication.

It is plain, from the tenor of the reply the company did make on the ninth, that it did not understand the plaintiff to have requested any indulgence. The letter states, viz.: "We are in receipt of your letter in regard to the above policy, and, in reply, would state it would be advisable to make the remittance spoken of in your letter to us at an early date, thereby reviving the insurance and causing no uneasiness to yourselves in this case." As already stated, the fire occurred the day this reply was written, to wit, November 9. On November 16, plaintiffs notified the company of the fire and inclosed, by express, $20 in currency, to pay past-due installment of premium. The company received this remittance on the twenty-second, and, on the twenty-eighth, returned the money, upon the ground that the loss had been sustained after the maturity of said installment, and while the policy was in suspense for nonpayment of premium." Plaintiff claims that the company retained this money an unreasonable time before returning it, and relies upon this fact as evidence of the waiver of the forfeiture. The stipulation of the policy on the subject of waiver is, viz.: "A receipt from the agent of the company must be received by the assured before there can be a revivor of the policy. No agent or employe . . or any other person than the general manager of the western department at Chicago, shall have power or authority to waive or alter any of the terms or conditions of this policy, or make any in-

dorsements thereon, and all agreements by the general manager must be signed by him.'' It will be observed that, by this stipulation, the revivor of the policy was to occur only after the assured had received a receipt from the home office; and, secondly, this condition could not be waived by any other person than the general manager of the western department at Chicago. Many authorities are cited in the brief of counsel sustaining the validity of such conditions. *Walsh* v. *Hartford Fire Ins. Co.*, 75 N. Y., 10; *Marvin* v. *Universal Life Ins. Co.*, 85 N. Y., 278; *Quinlan* v. *Providence Washington Ins. Co.*, 133 N. Y., 364; *Hale* v. *Mechanics' Ins. Co.*, 6 Gray, 169; *Worcester Bank* v. *Hartford Ins. Co.*, 11 Cush., 265; *Fite* v. *Commercial Union Ins. Co.*, 144 Mass., 47; *Carey* v. *German Am. Ins. Co.*, 20 Lawyers' Rep. Ann., 271; *Knudson* v. *Hecla Fire Ins. Co.*, 75 Wis., 198; *Hankins* v. *Rockford Ins. Co.*, 70 Wis., 1; *Putnam Tool Co.* v. *Fitchburg Fire Ins. Co.*, 145 Mass., 265; *Enos* v. *Sun Fire Ins. Co.*, 67 Cal., 621; *Universal Mutual Fire Ins. Co.* v. *Weis*, 106 Pa., 20; *Hutchins* v. *Western Ins. Co.*, 27 Mo. App., 92; *Gould* v. *Dwelling House Ins. Co.*, 90 Mich., 302.

We do not mean to be understood as holding that the provision of the policy in respect to waiver might not itself be waived, and that there could be no revivor of a forfeited or suspended policy except in the precise manner provided by the policy. As stated by this Court in *Insurance Co.* v. *McCrea*,

*Maury & Co.*, 8 Lea, "a written contract may be changed by parol, and this although it stipulate that it shall only be changed in writing, for the obvious reason that men cannot tie their hands or bind their wills so as to disable them from making any contract allowed by law, and in any mode in which it may be entered into," citing *Pechner* v. *Phœnix Co.*, 65 N. Y., 195; *Insurance Co.* v. *Wilkinson*, 13 Wall., 222. "A written bargain is of no higher legal degree than a parol one. Either may vary or discharge the other, and there can be no more force in an agreement in writing not to agree by parol than in a parol agreement not to agree in writing. Every such agreement is ended by the new one which contradicts it." *Westchester Fire Ins. Co.* v. *Earle*, 33 Mich., 153; *Insurance Co.* v. *Norton*, 96 U. S., 234. "It seems to follow," says the Court, "that a parol permission may equally be given (although the terms of the policy require the permission to be indorsed on the policy), or a forfeiture may be waived, by parol. . ." In this connection, it may be noticed that the decisions have transferred to the Courts of Law, in this class of cases, the equitable doctrine of estoppel, where a parol license or assent has been given in place of a license or assent in writing, as required by the power under which the party acts. *Planters' Ins. Co.* v. *Myers*, 55 Miss., 47. . . So, in cases of leases requiring assent in writing as to subletting or alteration, a parol assent will suffice. And the waiver of a forfeiture under a policy has

4—11 P

been likened to a waiver of a forfeiture under a lease. *Insurance Co. v. Norton*, 96 U. S., 242. The doctrine of waiver, it has been well said, to avoid the enforcement of conditions in a policy is only another name for the doctrine of estoppel. *Globe Mutual Ins. Co. v. Wolf*, 95 U. S., 326. There should be, to constitute a waiver of the forfeiture of a policy, either a contract supported by a consideration, or the necessary elements of an estoppel." Per Cooper, J., in *Insurance Co. v. McCrea*, 8 Lea, 513. Applying these principles here, there were no facts whatever tending to show a parol waiver of the forfeiture, or any evidence upon which an estoppel could be rested. At most, there was mere silence on the part of the company, without any acts or declarations upon the part of its agents, tending to mislead plaintiffs to their prejudice. A waiver is an intentional relinquishment of a known right, or such conduct as warrants an inference of such intent. 57 Vt., 520. And so it is also sometimes said that a waiver never occurs unless intended, or where the act relied on as a waiver is such that it ought, in equity, to estop the party from denying it. 2 May on Insurance, § 508.

It is insisted by counsel for appellant that, while the trial Judge conceded plaintiff's contention to the effect that the condition of the policy in respect to the manner of waiving, might itself be waived, yet, in the latter part of the charge, he instructed the jury there could be no waiver except in writing.

The Circuit Judge first instructed the jury on this subject thus : "Forfeitures by reason of the non-performance of conditions precedent in a policy, are not favored by the law; and a waiver of these terms and conditions in the policy and premium note may be inferred from the dealings of the defendant company with the plaintiffs. Any condition may be waived, although the policy provides that there shall be no waiver, or a waiver only in a particular way. And a waiver may be inferred from any acts of the defendant company which reasonably indicated that they did not intend to insist upon a compliance with these terms. There can be no waiver of the force and effect of these clauses unless it was so intended by the manager of the insurance company at Chicago and so understood by Mr. Dale, or else that the manager at Chicago so acted, in replying to the letter of Mr. Dale, as to lead him to believe that he intended to waive the clause in the policy requiring prompt payment of the note or a forfeiture of the policy."

The instructions, down to this point, are to the effect that even the condition that no waiver could be made, except in writing, by the manager at Chicago, might be itself waived, yet, in a subsequent paragraph, on page 82, he says that "there can be no waiver, except by the general manager of the western department at Chicago, in writing, signed by him." In the next paragraph the same charge is repeated. Again, in the closing paragraph, on page

83, he tells the jury that "there can be no waiver of the conditions of the policy, except in writing by the general manager or person under him in his office."

While we think the instructions given the jury on the subject of waiver, in the opening and concluding portions of the charge, were wholly irreconcilable, yet the case should not, for this reason, be reversed.  There were no facts presented in proof tending to show there had been a waiver of the forfeiture of this policy.  The error was, therefore, innocuous.  The Court should, upon a hypothetical statement of all the facts relied on by plaintiff as constituting a waiver, have instructed the jury that, as a matter of law, there was no waiver.  For the same reason, there was no error in refusing to charge that the acceptance and retention by the company, for a few days, of the past-due installment of premium, which plaintiff remitted to the company after the fire, would constitute a waiver of the default.

The judgment is affirmed.