M. D. GLEASON *et al.* *v.* PRUDENTIAL FIRE INSURANCE
COMPANY.

*(Knoxville.* September Term, 1912.)

1. **APPEAL. Concurrent finding of master and chancellor is con-
clusive, if sustained by any evidence.**

The concurrent finding of the master and chancellor will be held
to be conclusive on appeal, where there is any evidence to sus-
tain it. (*Post, pp.* 13, 15.)

2. **FIRE INSURANCE. Nonpayment of premiums avoids policy
where it is so stipulated in the policy and premium notes.**

Where a fire insurance policy and the premium notes provided
that the failure of the assured to pay any premium note when
due shall cause the policy to be lapsed, suspended, null, and
void, the assured's failure to pay premiums as stipulated will
avoid the policy and render it nonenforceable. (*Post, pp.* 14, 15.)

Cases cited and approved: Dale v. Insurance Co., 95 Tenn., 38;
Ressler v. Insurance Co., 110 Tenn., 411; Insurance Co. v.
Galbraith, 115 Tenn., 471.

3. **GENERAL CREDITORS' BILL. Against insolvent corporation
will be sustained in behalf of intervening creditors, though com-
plainant failed to establish his claim.**

The *status* of a general creditors' bill against an insolvent cor-
poration cannot be affected by the ultimate decision against
the merits of the complainant's demand, where other creditors
intervened. Therefore, where one, claiming to be creditor of an
insolvent fire insurance company by reason of an alleged loss
under a policy, filed a general creditors' bill against said com-
pany, but failed to establish his claim as a creditor, such bill
will be sustained as a general creditors' bill where other creditors
intervened and established their claims. (*Post, pp.* 15-17.)

Gleason v. Insurance Co.

**4. MUTUAL ASSESSMENT FIRE INSURANCE.** Companies have no capital stock; cash premiums and premium notes constitute their assets; members cannot recover cash nor avoid notes, when.

Mutual assessment fire insurance companies have no capital stock. The cash paid in for premiums and the premium notes constitute their assets, and the policy holders or members sustain a relation to the company very similar to that of stockholders: and hence, upon the insolvency of such company, a policy holder cannot recover premiums paid in or avoid premium notes, so long as the company has outstanding debts. (*Post, pp.* 18, 19.)

Acts cited and construed: Acts 1907, ch. 461.

Case cited and approved: Gleason v. Insurance Co., 2 Higgins 376.

**5. SAME.** Insolvency and appointment of receiver terminates outstanding policies.

Upon the insolvency of a mutual assessment fire insurance company and the appointment of a receiver for it upon that ground, its outstanding policies are canceled by operation of law, and subsequent losses under such policies are not liabilities enforceable against the receiver, regardless of the payment of premiums and the period of its existence. (*Post, pp.* 19-22.)

Cases cited and approved: Commonwealth v. Insurance Co., 119 Mass., 45; Taylor v. Insurance Co., 46 Minn., 198; Doane v. Insurance Co., 43 N. J. Eq., 522.

**6. FIRE INSURANCE.** Failure of local agent and adjuster to furnish blanks for proof of loss as promised, is a waiver of condition as to time limit of proof.

Where the local agent and the adjuster of a fire insurance company promised to furnish the insured with blanks on which to make proof of his loss, the failure to furnish the insured such blanks within the time stipulated by the policy is a waiver of the condition requiring the insured to make proof of loss within that time. (*Post, pp.* 23-25.)

Case cited and approved: Insurance Co. v. Wiggington, 89 Ky., 330.

7. **SAME. Requirement of policy as to time limit for filing proofs of loss is superseded by court's order for filing and proving claims under general creditors' bill.**

Where a fire insurance company became insolvent and a receiver was, under a general creditors' bill, appointed, upon the ground of such insolvency, after the insured suffered a loss, but before the time for filing proofs had expired, and the court fixed a time within which all creditors were required to file petitions establishing their claims, that order superseded the requirement of the policy as to the time limit of filing proofs of loss. (*Post, pp.* 25-27.)

8. **SAME. No action on policy misdescribing location of property intended to be insured; remedy by reformation of policy.**

Where, by mistake, a fire policy erroneously located the property intended to be insured, the insured cannot maintain an action upon the policy for the loss of property burned in a location other than that described in the policy; but the remedy of the insured is to seek a reformation of policy. (*Post, pp.* 27, 28.)

9. **SAME. Policy to husband and wife on her real property is valid; for he has an insurable interest in her such property.**

A policy in a fire insurance company, issued to husband and wife on her real property held by her as a general estate, entitles them to recover for a loss under the policy; for the husband has a freehold estate and other rights in his wife's land held by her as a general estate giving him an insurable interest therein. (*Post, pp.* 28, 29.)

Case cited and approved: Tyree v. Insurance Co., 66 L. R. A., 657.

10. **SAME. Uncontradicted testimony of an unimpeached litigant must be accepted as true.**

In an action against an insurance company, where the testimony of the insured was in no way impeached, nor was there any attack made on his character, his testimony as to the facts with reference to the issuance of the policy and notice of maturity of premium note must be accepted as true, when standing uncontradicted. (*Post, p.* 30.)

Gleason v. Insurance Co.

11. SAME.    Agent's agreement to give notice of maturity of premium note waives forfeiture for its nonpayment at maturity, where no notice was given.

Where the agent of an insurance company, for the purpose of inducing the insured to accept a fire policy, agreed that the company would give him reasonable notice of the maturity of a premium note, such agreement, being a part of the consideration of the contract, will prevent the insurance company from declaring or insisting on a forfeiture of the policy for the nonpayment of such note, when no notice was given. (*Post, pp.* 29-31.)

Case cited and approved:  Alexander v. Insurance Co., 67 Wis.. 422.

---

### FROM KNOX.

---

Appeal from the Chancery Court of Knox County.— JAMES MAYNARD, JR., Special Chancellor.

JEROME TEMPLETON and C. W. LESTER, for Gleason.

GREEN, WEBB & TATE, for receiver.

JEROME TEMPLETON, for Sellers.

WRIGHT & JONES, for Birdwell.

SAYLOR & MOORE, for Martin.

W. A. OWENS, for SILCOX.

WALTER H. ANDERSON and HUGHETT & HUGHETT, for Adkisson.

WM. I. DAVIS, for Phelps.

WEBB & BAKER, for Leeson & Drummond.

MR. JUSTICE GREEN delivered the opinion of the Court.

This bill was filed by the complainant, claiming to be a creditor of defendant insurance company, and seeking to recover the amount alleged to be due him under a policy of insurance which had been issued to him. The bill was also filed as a general creditors' bill, alleging the insolvency of the company, and asking for the appointment of a receiver, and that its affairs be wound up under the supervision of the chancery court.

A receiver was appointed for the company, and publication was made for creditors, and numerous intervening petitions were filed in the cause.

A final decree was passed by the chancellor, and the case is for the second time before us, and several questions which will hereafter be disposed of relative to the rights of the complainant and of various petitioners are involved on this appeal.

The first matter arising is as to the right of the complainant himself to a recovery on his policy. This policy appears to have been issued June 5, 1909, for $2,000, on a stock of goods, storehouse, and fixtures. The premium on the policy was $72, for which complainant executed two notes, for $36 each, dated June 5, 1909, and payable, respectively, in thirty and sixty days.

No payment was made on either note until August 20th, when complainant paid $20 to the insurance company's collector.

The complainant contends that at this time an agreement was made between him and the collector whereby

both of these notes should be extended until November 15th. The fire occurred on November 4th. The contention made for the receiver is that, upon the payment of the $20 aforesaid, the first note was extended until October 1st, and the second note was extended until November 1st.

Indorsements upon the notes bear out the receiver's contention, and it is in evidence that the company wrote to the complainant early in October, calling his attention to the fact that his note due October 1st was unpaid. The company's agent, who dealt with complainant in regard to this policy, and made the collection of the $20, also states that, upon receipt of that payment, extensions were made as claimed by the receiver.

On behalf of the complainant, he himself and two other witnesses testify that at the time of the $20 payment, the company's agent agreed with the complainant to extend both notes until November 15th.

Much is said by counsel for each side reflecting on the credibility of testimony offered in behalf of the other.

This controversy, along with the others arising in the case, was referred to the master for determination. The master reported against complainant's claim, and this report was confirmed by the chancellor.

We see no reason for departing from the rule that we will uphold a concurrent finding of the master and chancellor, where there is any evidence to sustain it. There is abundant evidence to sustain the finding here, and it must be regarded as conclusive.

This being the case, and complainant being in default on these notes at the time of this loss, he is not entitled to any recovery against the company.

The policy provides in its face that, on the failure of the assured to pay any premium note when due, it "shall lapse and the liability of the company thereon be suspended, and no loss or damage shall be collectible from the company, if loss or damage shall occur to the insured during the period of such lapse caused by arrearage."

The notes also provide, if they are not paid at maturity, that "the policy shall be null and void," and so remain until same shall be fully paid.

"Failure to pay an installment or premium on a fire policy at maturity will defeat the assured's recovery for a loss that occurred during his default, where both the policy and the installment notes provide that the policy shall lapse upon default in payment of premium." *Dale* v. *Continental Insurance Co.*, 95 Tenn., 38, 31 S. W., 266.

"A policy of insurance containing a stipulation to the effect that nonpayment at maturity of any premium note given by the assured and accepted by the insurer would forfeit the policy is rendered void and nonenforceable by the nonpayment of the note at maturity." *Ressler* v. *Fidelity Mutual Insurance Co.*, 110 Tenn., 411, 75 S. W., 735.

"Where a life insurance policy provides that it shall lapse and be void if the premiums thereon are not paid when due, it is well settled that such policy will be,

forfeited, if the premiums are not paid as stipulated."
*Life Insurance Co.* v. *Galbraith,* 115 Tenn., 471. 91 S.
W., 204.

Without further discussion, therefore, it is obvious
that the complainant is not entitled to recovery upon
his policy, when rules of law fully established in this
State are applied to the facts herein concurrently found
by the master and chancellor.

Accordingly, the decree of the chancellor must be
affirmed, in so far as it denied relief to the complainant
on his policy.

Another question arises on this bill. It was drafted
as a general creditors' bill, and a *fiat* for injunction
obtained from the chancellor. Some days elapsed before
it was filed. Immediately thereafter, Leeson and Drum-
mond presented to the chancellor a bill in the nature
of a general creditors' bill against the company, which
was allowed to be filed *pro tempore* as a sort of petition
in Gleason's suit. Leeson and Drummond had been
officers of defendant corporation, as well as creditors,
and they denied the validity of Gleason's claim, and
said they filed their bill to insure the winding up of
the company by the court, if Gleason failed to establish
his claim.

Some preliminary proceedings were had before the
chancellor, and he made an order sustaining Gleason's
bill as a creditors' bill; but such order was conditioned
on the validity of Gleason's claim, and provided, if
such claim proved ill founded, then the bill of Leeson

and Drummond should be treated as the general creditors' bill.

The final decree dismissed Gleason's bill outright, and it is here said that this action, as well as the former order conditionally sustaining the bill as a general creditors' bill were both erroneous. These criticisms are well made.

Upon the insolvency of the company becoming apparent, as it did, from the answer to Gleason's bill, the chancellor should have unconditionally sustained said bill as a creditors' bill. It was the first one presented and filed, and there is no reason for saying it was not preferred in good faith. Its *status* as a creditors' bill could not be affected by the ultimate decision of the merits of complainant's demand, if other creditors intervened. The condition of the corporation, not the individual right of Gleason to recover, should have been chiefly considered by the chancellor in making the preliminary order. There was no justification for the bill of Leeson and Drummond as a creditors' bill. They could have come into Gleason's suit by petition, and thereby have secured and made certain the administration of the affairs of this corporation by the court, irrespective of the final disposition of Gleason's claim.

The order of the chancellor provisionally sustaining the Gleason bill as a creditors' bill was erroneous, and properly excepted to. The subsequent decree dismissing said bill outright was also erroneous. Petitions had been filed in the cause, and the administration of the corporation's affairs undertaken, and the bill

of Gleason should have been retained as the general creditors' bill, even though he failed to establish his claim. He was properly taxed with part of the costs. He should pay such of those as accrued with respect to the trial of his claim.

The chancellor's decree will be modified, so as to sustain the Gleason bill as a general creditors' bill.

A number of controversies arising upon intervening petitions are before us on this appeal, which we proceed to consider separately.

## G. W. SELLERS.

This petitioner took out a policy for $2,500, on his residence in Newport. The policy was dated May 19, 1909, and was to run three years. The petitioner paid the premium exacted by the company. The property was destroyed by fire August 24, 1910. The creditors' bill was sustained, and a receiver appointed, it will be remembered, on November 15, 1909.

The petitioner claims that, having procured and paid for insurance for a term of three years from May 19, 1909, the insolvency of the company did not terminate this contract, but that the receiver is liable for this loss. Petitioner avers that no part of his premium was returned to him or offered to him by the receiver, but, on the contrary, a call or demand for contingent premium has been made upon him. An answer was filed by the receiver, in which he denied petitioner's right to recover, and the receiver also filed his answer as a cross bill to

127 Tenn.—2

recover from petitioner the contingent premium aforesaid.

This company was a mutual insurance company, authorized by chapter 461, of the Acts of 1907.

This case, on other features, was before this court at the last term, coming from the court of civil appeals by *certiorari*. We had occasion at that time to consider the nature of such companies, and the nature of the contract between such companies and their members. These matters were fully discussed in an opinion of the court of civil appeals, which we affirmed. *Gleason* v. *Insurance Co.*, 2 Higgins, 376.

In that case it was held that a member of one of these mutual companies was liable for the amount of his premium note, even though the company had failed and was unable to continue the policy of insurance, and there had accordingly been a failure of the consideration for which the note was given. It was said that the members of such companies were both insurers and insured; they were not only policy holders in such cases, but quasi stockholders; and that their premium notes were assets in the hands of such companies for the payment of creditors.

Companies organized upon the plan of this one have no capital stock. The cash paid in for premiums and the premium notes constitute their assets, and the policy holders or members sustain a relation to the company very similar to that of stockholders. They can no more recover premiums paid in, nor avoid premium notes, in case of insolvency, than could stockholders in

an ordinary corporation recover money paid in subscription to stock, or avoid notes given for subscription to stock.

So, the insolvency of a company like this gives no right to a policy holder to recover any premium paid, or to avoid the payment of any premium note, so long as the company has outstanding debts.

Upon a loss by fire, the rights of the policy holders against the company are matured. Such policy holders then become creditors, and are entitled to have subjected to their claims all the assets of the company, and, if necessary, to call on other policy holders for contingent premiums provided by statute. The contract between its members and such companies as this is peculiar. However, such companies have existed for a long time, and the rights of the parties to such contracts have been frequently considered by the courts of this country, and the rules of law with reference thereto are now firmly established. The authorities are as follows:

"Upon the appointment of a receiver on the ground of insolvency, the outstanding policies of the company are canceled by operation of law, and subsequent losses under such policies are not liabilities which may be enforced against the receiver. This rule is not changed, even though by the terms of the policy the company is required to give notice to the insured in case it desires to cancel the policy. Holders of policies on which premiums have been paid for a term extending beyond the insolvency have valid claims against the company for

unearned premiums. A statute making the officers personally liable on polices issued by them when they knew the company to be insolvent does not render a policy issued under such condition void. The policy is binding on the company, with the individual liability of the directors superadded. The right of holders of unmatured policies is to share in the assets after payment of debts, while the holders of matured policies are regarded as creditors." 22 Cyc., 1421.

"On the other hand, the insolvency of the company does not terminate the obligation of policy holders to contribute to the payment of losses which have occurred prior to insolvency, and those giving premium notes are also liable to assessment for the payment of unearned premiums on business done under the cash plan. Assessments cannot be collected from holders of policies which are issued in violation of law. And they can only be made on existing members; that is, members whose policies are still in force at the time of insolvency. Assessments cannot be made on persons who, having had policies in the company, have surrendered and canceled them; and the receiver is bound by the prior action of the officers of the company in settling with policy holders and canceling their policies so as to relieve them from assessment. A member may also be relieved from liability on showing that he became such through fraud or mistake." 22 Cyc., 1422, 1423.

The supreme court of Massachusetts has said:

"It is an incident of the peculiar contract and relation which each member of a mutual insurance company,

enters into with the other members that the injunction and judicial sequestration of all the property of the corporation terminates its liability for future losses. *Commonwealth* v. *Mass. Mutual Fire Ins. Co.*, 119 Mass., 45.

Speaking of the results of insolvency, the supreme court of Minnesota observes:

"The effect was to terminate all contracts of insurance at the date of the appointment of the receiver. These contracts were not debts or fixed liabilities of the company. In respect to them, its liability depended upon the contingency of losses by the assured during the life of the policies, and when losses have not occurred before the adjudication of insolvency, the only liability to the policy holder is for the breach or cancellation of the contracts by the adjudication of the insolvency, and the consequent suspension of all business by the company, and its disability to fulfill its contracts of indemnity, and the measure of damages is the surrender value of the policies." *Taylor* v. *North Star Ins. Co.*, 46 Minn., 198, 48 N. W., 772.

The same result was reached in *Doane* v. *Millville Mutual M. & F. Ins. Co.*, 43 N. J. Eq., 522, 11 Atl., 739.

Other cases to this effect are collected in the Cyclopedia of Law, under the sections above quoted, and all the cases to which we have had access announce the same rule.

That is to say, that upon insolvency of a mutual insurance company, such as the one being wound up, its outstanding policies are canceled by force of law, and no recovery can be had against it for subsequent losses.

The only damage to which a policy holder is entitled, under these circumstances, is a *pro rata* of his unearned premiums, or any surrender value the policy may have, if anything be left after the payment of creditors.

We must therefore hold that petitioner Sellers is not entitled to recovery on his policy. As observed in *Doane v. Insurance Co.*, supra, this result may seem hard; but it is the best that can be reached, by reason of the peculiar incidents of such contracts of insurance with companies so organized.

With reference to the cross bill of the receiver against this petitioner, it is conceded upon the brief of counsel for the receiver that this petitioner is only liable for the contingent premium to the extent that an assessment may be necessary to pay losses accruing between the date of his policy and its termination. Such, in fact, is the provision of the statute. Therefore the chancellor's decree must be modified in this respect; otherwise, it will be affirmed.

Inasmuch as this case has to be remanded for various further proceedings, the contingent liability of Sellers may be established by appropriate action of the receiver later, if necessary.

We have examined the authorities cited by counsel for petitioner, but think that they are not applicable here. This company was organized under our statute, and the rights of its members or policy holders cannot be determined by rules of law applicable to policy holders in standard or old line insurance companies.

### J. W. BIRDWELL.

This petitioner had a policy for $2,000 on a stock of goods located in Johnson City. The loss occurred August 10th, and amounted to $2,485.66.

This policy was issued by Dulaney, the local agent of the company at Johnson City. Notice was given the company respecting the fire, and three or four days thereafter Drummond, an adjuster for the company, came to Johnson City to investigate.

The petitioner was away from town on the day Drummond arrived, and did not see him, but did see him within thirty days after the fire. At that time, Drummond agreed to come back to Johnson City shortly and adjust or settle the loss.

The defense interposed by the receiver in this case is that formal proofs of loss were not filed within sixty days, as required by the policy. The petitioner testifies, as said above, that Mr. Drummond, within thirty days after the fire, when he saw him in Knoxville, promised to come up and adjust matters in a short while. He also testifies that, upon the occasion of Drummond's first trip to Johnson City, when petitioner was absent, Drummond stated then that he would be back in a few days. It seems that Drummond never did come back to Johnson City, in accordance with these promises, and a short while after the sixty days had expired formal proofs of loss were filed with the company by this petitioner.

In addition to the foregoing, petitioner testifies that he applied to Dulaney, the local agent, immediately

after the fire, for a proof of loss blank. Dulaney stated that he had never been supplied with such blanks, but later, on the occasion of Drummond's trip to Johnson City, three or four days after the fire, Drummond promised to have such blanks sent to Dulaney, and Dulaney in turn promised to deliver one of them to petitioner. Petitioner says further that, when he met Drummond in Knoxville, Drummond promised to send him a proof of loss blank. Neither Drummond nor Dulaney ever supplied this petitioner with these blanks, as they had promised. The foregoing is the testimony of petitioner, and no proof is introduced in behalf of the receiver to the contrary.

We are of opinion that the conduct of the agents of the company with respect to this petitioner amounted to a waiver of the company's right to insist on proofs being filed within the sixty days. The general rule of law is:

"When the company, with knowledge that notice and proofs have not been given and furnished, as required by the policy, so acts in relation to the matter as to lead the assured to reasonably believe that the policy is still in force and binding, there is a waiver of objection to the manner or time of notice and proofs, and accordingly the company cannot take advantage of the default." 19 Cyc., 857.

"Negotiations or proceedings by the company with reference to settlement of loss will be a waiver of failure to give notice or make proof of loss." Id., 865.

Without, however, considering the effect of these negotiations, indicating that it proposed a settlement, the

company is precluded from making the defense here relied upon by the promises of both the local agent and the adjuster to supply the insured with the blank proofs of loss, which was never done.

Authorities are uniform, "if the agent offers to furnish blanks and fails to do so, the want of proofs is waived." 19 Cyc., 862.

This question is clearly discussed in *Kenton Insurance Co.* v. *Wigginton*, 89 Ky., 330, 12 S. W., 668, 7 L. R. A., 81, and other authorities are cited to the same effect in note 26, 19 Cyc., 862.

For the reasons stated, we think the chancellor was in error in dismissing Birdwell's petition, and his action in this respect will be reversed.

## F. B. MARTIN.

F. B. Martin had a policy for $700, covering his barn and contents. The property insured was destroyed by fire on October 13, 1909.

The only defense interposed to his claim is that he failed to, file proofs of loss with the company within sixty days after the fire. As has been stated, the policies of this company contained a provision in ordinary form requiring such proofs to be filed within that time.

The defense was thought to be good by the chancellor, and the petition dimissed. We are of opinion that the chancellor was in error. The creditors' bill in this case was filed November 11th, and sustained November 15th, and the usual publication made with respect to creditors.

In the order appointing the receiver, etc., all creditors were required to come into the case "by petition," and file and prove their respective claims on or before June 13, 1910. It seems to us that this order of the court superseded the requirements of the policy as to the filing of proofs of loss. Creditors were required by said order to present their claims "by petition" in court. It would have availed Martin nothing to have presented his claim otherwise. At the time the creditors bill was sustained only thirty-three days had elapsed of the sixty days allowed him in which to file proofs.

There was no necessity for petitioner to have filed proofs of loss with the receiver. The receiver could not have considered such proofs presented to him, according to the terms of the policy, as if the company was a going concern. It would have been a useless performance for Martin to have undertaken to present his claim to the receiver in this way. He was required by the chancellor's order to present his claim "by petition," and proofs of this claim had to be made upon such petition in court.

By its very language, the order of the court extended the time for filing all claims until June 13, 1910. As has been said before, this order superseded the limitations of the policy.

There can be no objection to the form in which Martin submitted his claim in his petition. He therein stated the character of the loss with detail and particularity, and the petition was, of course, sworn to. This petition set out the value of the barn, and hay, oats,

corn, etc., therein contained, by items, the whole aggre-gating more than $700, and there is no question but that there was a total loss.

For the reasons stated, the decree of the chancellor on Martin's petition will be reversed, and this claim allowed.

### LEVI SILCOX.

This intervener had a policy for $1,200 on a large quantity of lumber, which was destroyed by fire September 25, 1909.

The policy described the property insured as 90,000 feet of oak and poplar lumber on Central avenue, La Follette, Tenn. As a matter of fact, the lumber was actually stacked a mile west of the town of La Follette, and was not on Central avenue.

The chancellor dismissed this petition, and it is argued by counsel for Silcox upon appeal that the location of the property given in the policy was the mistake of the agent of the company. Proof is introduced tending to show that the agent, when writing this policy, was correctly informed as to its location, and that the erroneous location given in the policy was due to his mistake. However this may be, whoever made the mistake in the outset, we do not think there can be a recovery upon this petition and upon this policy for the property that was actually destroyed. The matter of the location of the risk is one of highest importance in all insurance contracts. Premiums vary according to the location of the risk, and the location otherwise enters into the contract between the parties.

If the agent did make a mistake in writing up this policy, as from the proof herein he appears to have done, the remedy of petitioner is to ask for a reformation of the policy, so as to make it evidence the contract actually made between him and the company.

There can be no recovery under a policy covering lumber on Central avenue, in La Follette, for the destruction of lumber a mile west of the town of La Follette, unless there be a reformation of the policy.

The decree of the chancellor denying relief on this petition will be affirmed; but the cause will be remanded in this respect to permit of amendments to the petition along the lines suggested.

## W. WALKER ADKISSON AND WIFE.

The only question raised upon this petition is whether the husband has an insurable interest in the wife's general estate. The title to the property insured and destroyed was in Mrs. Adkisson, but the policy was issued to Adkisson and wife, and it is insisted on behalf of the receiver that Adkisson did not have any interest in this property, and that there can be no recovery on this policy. This defense is not well made.

It appears in the proof that the property was Mrs. Adkisson's general estate. Her husband, therefore, had a freehold estate therein, with the right to control it, and various other rights respecting it, which are well recognized. Standing in this attitude to the property, he had an insurable interest in it. We have so held in former unreported cases. Many authorities to this ef-

fect are collected in a note to *Tyree* v. *Virginia F. & M. Ins. Co.*, 66 L. R. A., 657. The husband has a beneficial interest in such property, and he is also treated in many of the cases as agent for the wife respecting such property.

The decree of the chancellor, dismissing this petition, will therefore be reversed.

### G. L. PHELPS.

Phelps took out a policy for $1,000 for twelve months, on September 6, 1909, on certain property of his. This property was destroyed by fire on October 5, 1909. The premium on this policy was $25, of which $12.50 was paid in cash at the time the policy was issued, and for the balance Phelps executed his note for $12.50, due October 1st.

The defense to this claim is that the loss occurred on October 5th, when the premium note, due October 1st was still unpaid, and that, under the terms of the policy, failure to pay any premium note at maturity had the effect of suspending the policy and depriving the insured of the right to collect for a loss occurring while he was so in arrears.

Phelps testifies that when he took out this policy of insurance he told the agent that he could pay the entire premium in advance, if necessary; but the agent informed him that this was not required, that he might pay one-half then and give his note for the remainder. Phelps says he objected to this arrangement on the ground that he could not remember, or might forget,

when his premium note matured. The agent then, according to Phelps, promised him, and made an agreement with him, that he (Phelps) should have timely notice of the maturity of this note from the company, and upon this assurance of the agent, Phelps says, he took the policy upon the terms above stated. He further says that he received no notice whatever from the company in respect to this note until October 9th, and that in response to this notice he immediately mailed a check to the company for the $12.50. This check was mailed to the company on October 11th, and, the loss having occurred on October 5th, it returned the check and denied liability under the policy; but the agent who issued this policy to Phelps is not introduced by the receiver, nor is any attack made on the character of Phelps, and he stands uncontradicted in this record. We must, therefore, accept his statement of the facts with reference to the issuance of this policy as true.

The agent having agreed that the company would give notice in advance of the maturity of this note, and the company having failed to do so, it cannot now be heard to insist upon a forfeiture of the policy by reason of nonpayment of the note on the day it fell due. This promise of the agent was an inducement offered Phelps for taking out the policy, and was offered prior to the issuance thereof. It was part of the consideration of the contract, and was within the apparent scope of the agent's authority.

"A forfeiture is to be regarded as waived when the agent or the insurer agrees that he will give the insured

notice of the falling due of any premium note." 19 Cyc., 799.

The case of *Alexander* v. *Continental Insurance Co.,* 67 Wis., 422, 30 N. W., 727, 58 Am. Rep., 869, was a case where the agent agreed to give notice of the maturity of the installments of the premium, and the court held the insured entitled to rely upon such promises, even though the installments were several years past due.

Other cases to the same effect are therein cited in support of the above quotation from the Cyclopedia of Law.

So that, under the authorities, we think the chancellor was correct in holding that the company could not insist on a forfeiture of this policy, upon the facts heretofore stated.

A decree will be entered, disposing of these various matters as herein indicated, and the cause remanded for further proceedings.