### IN THE

# SUPREME COURT OF TENNESSEE

#### FOR THE

## WESTERN DIVISION

### APRIL TERM, 1924.

---

MARYLAND CASUALTY CO. *v.* MRS. GUSSIE McTYIER *et al.*

(*Jackson.* April Term, 1924.)

1. **INSURANCE.** Waiver of change of ownership of goods covered by policy by company through whom policy secured, binding.

Under Acts 1907, chapter 442, providing that any person soliciting an application for insurance shall in all matters relating to application and policy be regarded as agent of insurer, waiver of change of ownership of goods covered by burglary policy by company which secured and delivered it, transmitted premiums, and delivered receipts, was binding upon insurer. (*Post, pp.* 694-697.)

Acts cited and construed: Acts 1907, ch. 442.

Cases cited and approved: Duluth Nat. Bk. v. Knoxville Ins. Co., 85 Tenn., 76; Martin v. Ins. Co., 106 Tenn., 525; Schomer v. Hekla Fire Ins. Co., 50 Wis., 575; Central State Ins. Co. v. Lake Erie Prov. Co., 13 Ohio Cir. Ct. R., 661; Pollock v. German Fire Ins. Co., 127 Mich., 460.

Maryland Cas. Co. v. McTyier.

2. **INSURANCE.** Parol assent to change of ownership of property insured effective notwithstanding provision requiring writing.

Notwithstanding provision in burglary policy that assent to change of ownership of property insured must be in writing to be effective, parol assent by agent is effective under rule that provision requiring writing may itself be waived by parol. (*Post, pp.* 697-701.)

Cases cited and approved: Dale v. Continental Ins. Co., 95 Tenn., 38; Life Ins. Co. v. Fallow, 110 Tenn., 720; Farnum v. Phoenix Ins. Co., 83 Cal., 246; German Ins. Co. v. York, 48 Kan., 488; Farmers' Ins. Co. v. Ashton, 31 Ohio St., 477; Pollock v. German Ins. Co., 127 Mich., 460; Alkan v. Ins. Co., 53 Wis., 136; Body v. Ins. Co., 63 Wis., 157; Bennett v. Ins. Co., 70 Iowa, 600; May v. Western Assur. Co., 27 Fed., 260; McGraw v. Ins. Co., 54 Mich., 145; Ahlberg v. Ins. Co., 94 Mich., 259.

Cases cited and distinguished: Schomer v. Ins. Co., 50 Wis., 575; Continental Ins. Co. v. Ruckman, 127 Ill., 364.

3. **ESTOPPEL.** Not necessary to plead estoppel eo nomine where facts on which it rests appear.

Where bill alleged facts showing waiver by defendant of certain defenses, doctrine of estoppel applies, though it was not pleaded *eo nomine.* (*Post,* pp. 701, 702.)

Case cited and approved: Taylor v. Taylor, 6 Higgins, 275.

---

*Headnotes 1. Insurance, 32 C. J., section 132; 2. Insurance, 32 C. J., section 570; 3. Estoppel, 21 C. J., section 260.

FROM SHELBY.

Appeal from Chancery Court of Shelby County—Hon. F. H. Heiskell, Judge.

Bearman & Bearman, for complainants.

E. B. KLEWER and R. LEE BARTELS, for defendant.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This appeal is from a judgment on a burglary insurance policy, resisted on the ground of change of title of the property insured without the consent of the company.

The policy was originally issued to the husband of complainant, through F. B. Hunter & Co., local insurance agents, with whom the husband had various insurance transactions covering several years. Before the premium was paid by the originally insured, he went into bankruptcy. The property, a stock of merchandise was sold and purchased by his wife, the complainant. Soon thereafter a robbery occurred, followed shortly by another. It was insisted for complainant that Hunter & Co. were notified of the change of ownership before the first robbery and advised that no new policy would be necessary; and that before the second robbery the company's general agents in Memphis, Henderson & Schley, were advised of the change and acquiesced therein and thereafter accepted notice of the loss. Meanwhile, after these notices had been given, the premium was paid by the complainant to Hunter & Co., through whom the insurance had been originally placed.

Issues were submitted to a jury, who found: (1) That notice was given F. B. Hunter & Co. of the change of ownership on February 8th, a few days prior to the first robbery; (2) that Hunter & Co. advised complainant that no new policy need be issued; (3) that notice of the change of ownership was communicated to the com-

pany, or its general agents, Henderson & Schley, about February 22d; and (4) that the company or its general agents, Henderson & Schley, assented to the continuance in force of the policy.

These findings would seem to be conclusive of the case, but it is earnestly otherwise insisted on several grounds. It is said that F. B. Hunter & Co. were not agents of or acting for the company, but for the insured. It appears that this was a firm doing a general insurance agency business, and that it was through this firm alone that the insurance now in question was handled and placed. They accepted the application originally and delivered the policy, and it was to them that the premium payments were made, a number of weeks later, and after the change in ownership had taken place and the policy had been continued in force with their assent. The chancellor was of opinion that chapter 442, Acts of 1907, was controlling, section 1 of which provides:

"That any person who shall solicit an application for insurance shall in all matters relating to such application and the policy issued in consequence thereof be regarded as an agent of the company issuing the policy, and not the agent of the insured, and all provisions in the application and policy to the contrary are void and of no effect whatever; provided, this act shall not apply to licensed fire insurance brokers."

It is argued for the company that this act does not apply, first, because Hunter & Co. did not solicit the application in this case; and, second, because if they did their agency terminated with the delivery of the policy, and could in no event empower them to assent to the change. Definitions are given of the term "solicit" ap-

Maryland Cas. Co. v. McTyier.

pearing in the act, but when considered in its context
we are of opinion that this term includes broadly any
person who holds himself out as an insurance agent
and thus invites and receives insurance business, col-
lecting and transmitting premiums and delivering pol-
icies and receipts. By engaging in this business one so-
licits applications for insurance in the sense of this stat-
ute, and we think it clear that Hunter & Co. come with-
in this statute. Second, some holdings of other States
are quoted from, but the statutes construed are in no
case identical with the Tennessee act, the language of
which is so clear that there remains little room for con-
struction. It will be observed that it is expressly pro-
vided that "*any* person who shall solicit an application
for insurance shall *in all matters* relating to such ap-
plication *and the policy issued in consequence thereof* be
regarded as an agent of the company," etc.; and having
stated the proposition affirmatively, the act goes on to
provide negatively that such person *shall not be the agent
of the insured.* It is impossible to escape the effect of
the words which we have italicized above. It was mani-
festly not the intention of the legislature to restrict the
agency representation of the company to matters relat-
ing to the application only, but to extend it to all matters
relating to the policy issued. It is apparent that the
legislature purposed affording to the insured a respon-
sible connection with the insuring company, with which
he was dealing, oftentimes a nonresident corporate en-
tity of uncertain address, with its identity, for purposes
of legal notice, more or less obscure.

The act contemplates that one who is recognized by
an insurer as suitable and competent to handle its funds

and deliver its policies is also suitable to represent it in respect to other matters arising in connection therewith. Independently of this legislation, the limited agency doctrine has been generally recognized, by which the authority of the agent receiving the application and delivering the policy is restricted to matters in connection with the issuance of the policy and the application therefor.

The Tennessee cases cited by counsel (*Duluth Nat. Bk.* v. *Knoxville Ins. Co.*, 85 Tenn., 76, 1 S. W., 689, 4 Am. St. Rep., 744; and *Martin* v. *Ins. Co.*, 106 Tenn., 525, 61 S. W., 1024) arose prior to the passage of the act of 1907 and, moreover, are fire insurance cases, expressly excepted from the provisions of the act. These cases are therefore not controlling.

The Wisconsin and Ohio statutes are similar to ours, although not so express on the point under consideration, and they have been construed in accordance with the views above expressed. *Schomer* v. *Hekla Fire Ins. Co.*, 50 Wis., 575, 7 N. W., 544. We are cited to *Central State Ins. Co.* v. *Lake Erie Prov. Co.*, 13 Ohio Cir. Ct. R., 661; and see *Pollock* v. *German Fire Ins. Co.*, 127 Mich., 460, 86 N. W., 1017.

We deem it unnecessary to review further the authorities presented touching this proposition. In view of our statute, it must be held that F. B. Hunter & Co. were the agents of the insurance company in all matters relating to this policy issued through them. It follows that notice to them of the change and their assent thereto was notice to and binding upon the insuring company.

It cannot be questioned that either the bankruptcy of the insured or the subsequent sale and transfer of the

property covered to the wife, unless assented to by the insurance company, would avoid the policy. The jury has found that notice was given to F. B. Hunter & Co. and that they assented to the change before the first robbery occurred; and that notice was received by the general agents of the company and their assent given shortly after the first robbery and before the second loss.

It is insisted that there is no material evidence to sustain the finding of the jury with respect especially to the general agents, but we think there is material evidence of the notice to and assent of both Hunter & Co. and the general agents, as found by the jury. There is uncertainty as to just when and to what extent notice was given to the general agents and as to how fully they gave assent to the change of ownership, but there is some evidence to support the conclusion reached by the jury as to them; and there is no doubt whatever with respect to the notice to and assent of Hunter & Co., through whom the insured dealt, and in view of our construction of the act of 1907 this was sufficient to bind the insuring company. It is said that assent to the change in ownership could be given effectively by agents of the company in writing only, under the terms of the policy. The policy contract so provides, but it is well settled in this State, in line with other jurisdictions, that a written provision that the stipulations and conditions of the policy shall not be waived except by a certain officer may itself be waived by parol. *Dale* v. *Continental Ins. Co.,* 95 Tenn., 38, 31 S. W., 266; *Life Ins. Co.* v. *Fallow,* 110 Tenn., 720, 77 S. W., 960. And see Joyce on Insurance, section 441; *Farnum* v. *Phœnix Ins. Co.,* 83 Cal., 246, 23 P., 869, 17 Am. St. Rep., 233; *German Ins. Co.* v. *York,* 48 Kan., 488,

29 P., 586, 30 Am. St. Rep., 315; *Farmers' Ins. Co.* v. *Ashton*, 31 Ohio St., 477; *Pollock* v. *German Ins. Co.*, 127 Mich., 460, 86 N. W., 1017. And this rule is applied in cases of incumbrance and change of title. Joyce on Ins., sections 2248 and 2291A, and cases cited.

The leading case of *Pollock* v. *Ins. Co.*, supra, contains a full discussion, with quotations from numerous authorities, of the propositions involved in the instant case, particularly with respect to the effect of notice to the agent and the effect of his verbal assent to a violation of conditions of the policy; in that case a removal of the property insured being involved.

In that case, as in this, the insured did not deal directly with general agents of the company, but with brokers, or special agents, who in turn dealt with the general agents; but, as in this case, the insured did not know the exact relationship existing, but assumed that they were dealing with authorized agents of the company to whom they applied for the insurance, paid the premium, and from whom they received the policy. The pertinent section of the Michigan statute (Comp. Laws 1897, section 7246) reads as follows:

"The term 'agent' or 'agents,' used in this section, shall include any acknowledged agent, surveyor, broker, or any other person or persons who shall in any manner aid in transacting the insurance business of any insurance company not incorporated by the laws of this State."

Wisconsin has a similar statute, and the Michigan court, supra, quoted at length with approval from *Schomer* v. *Ins. Co.*, 50 Wis., 575, 7 N. W., 544, in which

the facts were substantially the same as in the Michigan case and the one at bar, as follows:

"Now it is difficult to imagine what object this provision was intended to accomplish, or what purpose subserve, if it has not the effect, under the circumstances, to make Lawson the agent of the defendant in the transaction. His acts, certainly, bring him within both the letter and spirit of the law. He was the only real actor for the defendant in making the contract; *pro hac vice* he assumed to represent, and did represent, the company in the matter; he received the application, settled with the insured the rate and terms of insurance, delivered to them the policy, collected the premiums, and shared in the commission. In fact, he did everything that was done on behalf of the company, except the mere act of countersigning the policy. He was the only person the plaintiffs dealt with; they knew no other agent in effecting the insurance; they were totally ignorant of his relation to the defendant, or of his want of authority to represent and act for it. It is idle to contend that he did not in any manner aid or assist in making the contract for the company, when he was, in fact, the only person who did treat with the plaintiffs on its behalf. . . .

"But it is said that it was unreasonable to make the defendant responsible for the acts of Lawson, who was never authorized to act for it or bind it in any way. The answer to this objection is, the legislature has assumed the right to regulate the business of insurance, and prescribe the manner in which it shall be conducted in this State. It has declared that whoever solicits insurance on behalf of an insurance company, or makes any con-

tract of insurance, or in any manner aids or assists in making such contract, or transacts any business for the company, shall be held an agent of such company to all intents and purposes. The obvious intention of the legislature is to make an insurance company responsible for the acts of the person who assumes really to represent and act for it in these particulars, and to change the rule of law that the insured must at his peril know whether the person with whom he is dealing has the power he assumes to exercise, or is acting within the scope of his authority. . . . It seems to be designed in the clearest manner to make the company responsible to the public for the acts of one whom it permits to solicit insurance on its behalf, or who receives applications for insurance, makes, or aids in making, contracts of insurance, or transacts the business, whether such person has in fact authority to act for it or not. The law imposes upon the company the duty of seeing to it that none but its regular authorized agents shall do its business or deal with the public. It is certainly not difficult for an insurance company to say to its local agents that they alone must transact its business; that they must in all cases deal directly with the insured in making insurance contracts, and not allow the interference of any stranger in its business, for whose acts it does not wish to be held responsible. That, this is the plain object and intent of the statute we have no doubt. And, where the insurance company issues a policy in a case where a person has assumed the right to act for and represent it in making the contract, it must abide by the consequences and meet the liability which the statute imposes upon it.''.

A like statute applying to a like case was construed in *Continental Ins. Co.* v. *Ruckman*, 127 Ill., 364, 20 N. E., 77, 11 Am. St. Rep., 121, where the court said: "The manifest intention was, to make such companies responsible for the acts not only of its acknowledged agents, etc., but also of all other persons who in any manner aid in the transaction of their insurance business. Nor do we see anything inequitable or oppressive in such provision. Doubtless the mere assumption of authority to act for an insurance company will not of itself charge the company with responsibility for the acts of the assumed agent. The company must in some way avail itself of such acts, so that the person performing them may be said to aid the company in its insurance business. But after a company has availed itself of the acts of an assumed agent and thus adopted them as its own, there is nothing oppressive in assuming, as against such company, the existence of the relation of principal and agent, and charging the company with responsibility for such acts."

See, also, *Alkan* v. *Insurance Co.*, 53 Wis., 136, 10 N. W., 91; *Body* v. *Insurance Co.*, 63 Wis. 157, 23 N. W., 132; *Bennett* v. *Insurance Co.*, 70 Iowa, 600, 31 N. W., 948; *May* v. *Western Assurance Co.* (C. C.), 27 Fed., 260; *McGraw* v. *Insurance Co.*, 54 Mich., 145, 19 N. W., 927.; *Ahlberg* v. *Insurance Co.*, 94 Mich., 259, 53 N. W., 1102.

The construction thus given these statutes seems to us applicable to the Tennessee act of 1907 and to the facts of the case before us.

It is true that by applying the doctrine of waiver effect is given to parol assent despite the provision of the policy requiring written assent, and that the doctrine of

estoppel is thus involved; but it is not necessary, even under the practice in this State, that estoppel be pleaded *eo nomine* where the facts on which the estoppel rests are set out in the pleadings. The bill in this case alleges facts which if true make out a waiver by the defendant of certain defenses, and the doctrine of estoppel thereupon applies. To this effect is the holding in *Taylor* v. *Taylor,* 6 Higgins, 275, in which case writ of *certiorari* was denied by this court.

Having found with the chancellor that the notice to and assent of F. B. Hunter & Co. was binding upon the insuring company, the insistence finally made on behalf of appellant that the loss under the first claim should not have been included in the judgment, upon the theory that the notice to the general agents was not proven to have been received by them until after the first claim arose, cannot be sustained, and the decree must be affirmed.