### 12203

#### ASKINS v. COLUMBIA NATIONAL LIFE INS. CO.

(188 S. E., 177)

1. INSURANCE—EVIDENCE HELD TO AUTHORIZE RECOVERY ON LIFE POLICY CLAIMED TO HAVE LAPSED.—In action on life policy, where defense was that insured had failed to pay full premium note when due and had given note for a part thereof which was not paid when due, and that policy thereupon lapsed, evidence *held* to support finding that plaintiff was entitled to recover face of policy less amount of loan thereon and less amount of note given for part of premium.

2. APPEAL AND ERROR—CIRCUIT JUDGE'S DECREE IN LAW CASE MUST BE AFFIRMED, IF FINDINGS ARE SUPPORTED BY EVIDENCE.—Decree of the Circuit Judge in a law case must be affirmed, if there is any evidence to support his findings.

Before DENNIS, J., Darlington, February, 1925. Affirmed.

Action by Lillie M. Askins against the Columbia National Life Insurance Company. Decree for plaintiff, and defendant appeals. Affirmed.

The report of Probate Judge McInnes was as follows:

"This is an action by the plaintiff against the defendant upon a $1,000 policy of insurance. This cause was docketed

. Note: On effect of provision suspending insurance during default in payment of premiums or assessments as affected by failure of insurer to declare a suspension before loss, see annotation in 8 A. L. R., 395; 14 R. C. L., 1192; 3 R. C. L. Supp., 355.

for trial on calendar 1, and before trial, through an agreement of counsel, it was referred to me to take the testimony and report my conclusions of law and fact. Some of the testimony was taken *de bene esse* and the balance was taken be me. All of the testimony is handed up herewith as a part of this report.

"On the 24th day of July, 1912, the defendant issued a policy of insurance upon the life of Samuel E. Askins and agreed to pay the said Samuel E. Askins on the 24th day of July, 1932, if he was then living, or to his wife, Lillie M. Askins, if he should die in the meantime, the sum of $1,000. Mr. Askins paid the premiums promptly for nine years. He was unable to pay the premium of $47.59, which fell due on July 24, 1921, and before said premium was due he wrote the company informing them that he would not have the money to pay it and seeking a way to extend the time for payment. In reply to this letter, the general agent of the company wrote Mr. Askins that he would have until August 24 to pay the premium, and that at that date he could pay $12.09 cash and sign a note for the $36 balance. Mr. Askins, in reply to this letter, wrote that he had the $12.09 cash, but did not know whether he could pay the $36 when it became ·due, as he anticipated that he might be unable to raise that amount of money when it should become due. In reply, the general agent wrote him as follows:

" 'Please send us the $12.09 and sign the note for $36, and when the note comes due you can.pay $12 more and renew the note for $24, for three months more, and when the $24 comes due you pay $12 and renew the note for three months for $12 more. In other words, you will be paying the premium quarterly. There will be no doubt but what we can arrange to your entire satisfaction the payment of the note when it comes due.'

"In accordance with this negotiation, the $12.09 in cash was paid and a premium note for $36 was given, dated July 25, 1921, and payable three months after date. This note

contained a provision that it should be a lien upon the policy in the event of the death of Askins, and that, if it should not be paid when due, without grace, the policy became void and the insurance should terminate. Samuel E. Askins died November 15, 1921. Askins and his wife had in 1920 borrowed on this policy the sum of $332.77, which is an admitted indebtedness against the policy.

"On October 25, 1921, the net cash value of the policy as diminished by said indebtedness was $7.66, and upon the note not being paid this was applied to the purchase of paid up insurance which amounted to $11, and defendant has tendered this amount to plaintiff, and it has been refused.

"The policy contains the following provision:

" 'Thirty-one days' grace is allowed for the payment of all premiums after the 1st, during which period the policy remains in full force. Upon default in payment of any premium or note given therefor, this policy shall lapse, and the company's only liability shall be such, if any, as is hereinafter provided.'

"Incorporated in the policy also is the following: 'Premiums may be paid ann. $47.59, semi ann. $24.75 and quar. $12.61.'

"Reading these provisions in connection with the letter of the general agent quoted above it seems to me that this amounts to a change in the contract as to the payment of premiums and changes the premium from being paid annually to quarterly. The letter of the general agent, after setting out the amounts of quarterly payments, contains these words: 'In other words, you will be paying the premium quarterly.'

"This letter is written on the letter head of the plaintiff and signed by their general agent, and it is clear that Askins acted on this letter in arranging for the payment of the premiums. It seems to me that this letter, taken in connection with the statement in the policy as to the method of premium payments, constitutes a contract between Askins

and the company so that the premiums might thereafter be paid quarterly. The mind of the general agent, acting for the company, and of Askins, acting for himself, clearly met on this point and I therefore find that Askins had the privilege of paying the premiums quarterly. This being the case, it is clear that the 31-day period of grace should attach to the payment of each quarterly payment and would therefore hold this policy in force and effect until November 25, 1921. Askins having died November 15, 1921, I find that the policy was still in effect.

" 'The rule is settled that, in case of ambiguity, that construction of the policy will be adopted which is most favorable to the insured. The language employed is that of the company, and it is consistent with both reason and justice that any doubt as to the meaning of its own words should be resolved against it. *First Nat. Bank v. Hartford F. Ins. Co.,* 95 U. S., 673, 678, 679; 24 L. Ed., 563, 565. *Thompson v. Phenix Ins. Co.,* 136 U. S., 287, 297; 10 S. Ct., 1109; 34· L. Ed., 408, 413. *Imperial F. Ins. Co. v. Coos County,* 151 U. S., 452, 462; 14 S. Ct., 379; 38 L. Ed., 231, 235.' Mr. Justice Sutherland in *Mutual Life Ins. Co. v. Packing Co.,* 263 U. S., 167; 44 S. Ct., 90; 68 L. Ed., 235; 31 A. L. R., 102.

"I therefore recommend that the plaintiff, Lillie M. Askins, have judgment against the defendant, the Columbia National Life Insurance Company, for the sum of $1,000, with interest from November 15, 1921, less the sum of $332.77, the amount of the loan, with interest at 5 per cent. from August 15, 1920, and less the sum of $36, which. was the balance due on the premiums for the last year that the policy was in force."

The decree of Circuit Judge Dennis here follows:

"This is an action on a life insurance policy, and by agreement was referred to the master to take testimony and report his conclusions of law and fact. This case comes before me upon exceptions to the master's report.

"The defendant issued a policy of $1,000 on the life of Samuel E. Askins July 24, 1912, and the premiums in full were paid up to July 24, 1921. On or about that date, S. E. Askins took up with the insurance company the matter of settlement of premium on this policy, and, pursuant to certain correspondence, Askins paid $12.09 and executed a note for $36, payable three months from date. When this note became due, it was not paid, and no effort was made by the defendant to collect the note. It does not appear that the note was sent through the bank for collection or that Askins was notified that the note was due. This note contained a stipulation that, upon failure to pay same when due, said policy should become void and the insurance terminate. This note became due on October 25, 1921, and S. E. Askins died on November 15, 1921. The defendant claims that the insurance became void because the note due October 25, 1921, was not paid when due.

"After hearing argument of counsel, it is ordered and adjudged that the exceptions to the report of the judge of probate be, and they are hereby, overruled, and the report of the master is confirmed.

"The evidence shows that on July 19, 1921, Askins wrote to the company, or its general agent, with reference to this policy of insurance, stating that he did not have money to pay the premium about due, and asking the general agent to get what he could for him on the policy. In reply to this letter, the general agent wrote Mr. Askins on July 21, 1921, advising Askins that he had until August 24, 1921, to pay the premium of $48.09, and stating further that he could then pay $12.09 cash and sign the inclosed note for $36. On July 29, 1921, Askins wrote to the general agent that he had received the note, that he had the $12.09 to make the cash payment, but that he might not have the $36 to pay when the note became due, and asked to hear further. The general agent then wrote Askins, acknowledging receipt of that letter, asking him to send the $12.09, to sign the note

for $36, and that when the note came due he could make a payment and renew, setting forth the payments and the renewals, and stating that he would be paying the premium quarterly. The last sentence in that letter states: 'There will be no doubt but what we can arrange to your entire satisfaction the payment of the note when it comes due.' Askins signed the note and sent in the cash payment. When the note came due, he was not notified. His attention was not called to the matter, and the company absolutely failed to do anything to make good their promise as contained in the last sentence of this letter. If they could not waive that stipulation in advance, it seems to me that the company is estopped from claiming forfeiture. In construing the note and the terms it contained, it is necessary to take into consideration the correspondence which shows that the company had advance notice that Askins might not be able to pay the note and that they induced him to sign the note by their promise to arrange the matter of payment when the note came due. It would be unfair in the highest degree to permit this defendant to obtain such a note under such circumstances and then try to get out of their obligation by claiming forfeiture.

"It is further ordered that the plaintiff have judgment against the defendant for the sum of $1,000, with interest from November 15, 1921, at the legal rate, less the sum of $332.77, the amount of the loan, with interest thereon at 5 per cent. from August 16, 1920, and less the further sum of $36, interest thereon from July 25, 1921, at 6 per cent., and it is further adjudged that the plaintiff recover the costs of the action."

*Messrs. Dargan & Paulling,* for appellant, cite: *Extended insurance obtained only by assured on election within days of grace. Beneficiary cannot elect after death of insured:* 253 Pa., 239; 136 N. E., 193; 129 S. E., 84; 132 S. C., 10. *Powers of corporations:* 122 S. C., 222; 83 S. C., 178; 104 S. C., 471; 185 U. S., 144; 46 L. Ed., 830. *Time*

*cannot be extended by implication beyond time expressly contracted for:* 244 S. W., 989; *Cases distinguished:* 114 S. C., 202; 8 A. L. R., 403; 47 U. S. (L. Ed.), 204; 26 U. S. (L. Ed.), 765; 14 R. C. L., 977, Sec. 149. *In absence of waiver or estoppel, failure to pay note when due works forfeiture of policy:* 125 S. E., 285; 127 S. E., 836; 100 S. W., 104; 12 Ann. Cas., 626; 8 A. L. R., 403. *In case at bar, agent's letter to insured no waiver:* 95 S. C., 1. *Company had right to retain note as evidence of agreement of which note was a part:* 89 S. E., 432; Id., 445; 156 Pac., 1042. *Policies may be modified by subsequent agreements:* 213 S. W., 242.

*Messrs. Miller & Lawson,* for respondent, cite: *Forfeiture clause does not apply where note given in part payment of premium:* 219 Ill. App., 177. *Grace provisions of policy not abrogated by clause in premium note:* 125 S. E., 285; 126 S. C., 219; Id., 261. *Presentment for payment cannot be dispensed with:* 112 U. S., 696; 28 L. Ed., 866. *"To settle is to pay:"* 35 Cyc., 1442. *Insurance company waives cash payment as stipulated in policy by accepting note in lieu thereof:* 37 S. C., 442; 51 S. C., 540; 71 S. C., 356. *Whether failure to pay note results in forfeiture of policy, question for jury:* 101 S. C., 249. *When company claims forfeiture for nonpayment of premium note, must offer to surrender same:* 60 S. E., 470. *Acceptance of note by company equivalent to cash payment. Nonpayment on maturity will not work forfeiture of policy unless stipulated to that effect at time note given:* 65 S. E., 714; 30 S. E., 918; 42 L. R. A., 261. *Letters pertaining to, and note, considered part of transaction:* 187 U. S., 345; 47 L. Ed., 210; 96 U. S., 234; 24 L. Ed., 689. *Forfeiture clauses may make contract voidable, not void:* 211 Fed., 747. *Company bound by acts of its agents; such acts conclusive upon company:* 125 S. C., 157; 102 S. C., 386; 116 S. C., 360; 119 S. C., 402; 124 S. C., 177; 119 S. C., 219. *"Waiver and estoppel:"* 131 S. C., 411; 144 U. S., 439; 12 S. Ct., 671; 36 L. Ed.,

496; 104 U. S., 252. *"Waiver:"* 78 S. C., 396; Id., 443; 124 S. C., 173; 46 S. C., 79; 57 S. C., 358; 54 S. C., 599; 55 S. C., 6; 14 R. C. L., 1197. *In case of ambiguity, construction of policy adopted which most favorable to insured:* 95 U. S., 673; 678-9; 24 L. Ed., 563, 565; 136 U. S., 287; 34 L. Ed., 408, 413; 10 S. Ct., 1019; 151 U. S., 452, 462; 38 L. Ed., 231, 235; 14 S. Ct., 379; 115 S. C., 59.

May 6, 1927.

The opinion of the Court was delivered by Mr. Chief Justice Watts.

This action was commenced on or about the 1st day of May, 1922, to recover $1,000, which the plaintiff alleges the defendant owes her, as beneficiary under a policy issued by the defendant on the 24th day of July, 1912, to her husband, Samuel E. Askins, who died on November 15, 1921. The defendant admits the issuance of the policy, the death of the insured, and that the plaintiff, his beneficiary, filed proofs of his death and demanded the payment of $1,000 and that payment thereof was refused; but alleges that the plaintiff and the insured obtained from the defendant an advance or loan upon the said policy of insurance which has not been repaid, and that the insured failed to pay the full premium due July 24th, 1921, but paid a part thereof in cash and gave the defendant his promissory note for the balance payable on October 25, 1921, and that said note was not paid when due, and that thereupon, in accordance with the terms of said policy of insurance and the said note, the policy lapsed and became effective automatically for paid-up insurance in the sum of $11, which was tendered to the plaintiff and refused by her, and that the defendant is and has been at all times ready and willing to pay the said sum of $11, which is the full amount and only amount in which the defendant is indebted to her.

By agreement of counsel the case was referred to Julius S. McInnes, Esq., Judge of Probate of Darlington County,

acting as master, "to take testimony and report the same, together with his conclusions of law and fact, with leave to report any special matter."

The judge of probate found that the plaintiff was entitled to recover $1,000, the face of the policy, with interest from November 15, 1921, less the sum of $332.77, the amount of the aforesaid loan, with interest thereon at 5 per cent. from August 15, 1920, and less the sum of $36, which was the amount of the note given for a part of the premium that was due on July 24, 1921.

The case was heard by Hon. E. C. Dennis, Judge of the Fourth Circuit, on defendant's exceptions to the judge of probate's report. On February 23, 1925, he filed a decree or order overruling the defendant's exceptions to the judge of probate's report and confirming said report, and this appeal is taken from said decree.

Both at the hearing before the master and before the Circuit Judge, the respondent took the position that under the grace clause of the policy the insurer had no right to insist upon forfeiture, because no note had been given for the premium, but for only a part thereof, and, in consequence, the forfeiture clause had no application; it being admitted that a fourth of the premium was paid in cash.

The appellant challenges the correctness of Judge Dennis' decree by five exceptions.

1, 2   This is a law case, and the Circuit Judge's decree must be affirmed if there is any evidence to support his findings; there is ample evidence to support his findings, and, under his findings of fact and his application of the law to the facts as found by him, we see no error.

The exceptions are overruled, and judgment affirmed.

MESSRS. JUSTICES BLEASE and STABLER and MR. ACTING ASSOCIATE JUSTICE RAMAGE: We agree with Mr. Justice Watts that the judgment in this case should be affirmed. The findings of fact by the judge of probate, acting master, concurred in by the Circuit Judge, are amply supported by

the evidence adduced in the case.  Let the report of the judge of probate and the decree of the Circuit Judge be reported.

Mr. Justice Cothran (dissenting):  From the admitted facts in this case, only questions of law being involved, I *think that the ·defendant* should have prevailed, and therefore dissent from the conclusions reached by Mr. Justice Watts.  His opinion appears to be based largely, if not entirely, upon the concurrent findings of the master and the Circuit Judge upon questions of fact, omitting all discussion of the law of the case.  As I view the matter, the facts are not at all in dispute; the real issue is upon the application of the correct principles of law to these admitted facts.

The action is based upon a policy of life insurance issued to Samuel E. Askins, on July 24, 1912, for $1,000.00; the beneficiary being the plaintiff, Lillie M. Askins, his wife. The annual premium upon the policy was $48.09, which the insured paid promptly up to July 24, 1921, a period of 9 years.  (In passing it may be remarked that the length of time in which the insured may have kept his policy alive is a negligible element in the controversy, for the reason that during that period he has been compensated for the premiums paid by the protection which in the meantime he has received.)

On August 16, 1920, Mr. Askins and his wife, Lillie M. Askins, borrowed from the appellant $332.77, which they acknowledge in writing as an indebtedness against the said policy and in consideration thereof assigned to the appellant, as security for said debt, all their right, title, and interest in and to the said policy, and agreed to pay interest upon said loan, including any increase thereof, at the rate of 5 per cent. per annum, payable annually in advance after July 24, 1921, to which date interest had been paid.

On July 19, 1921, five days before the premium of July 24th fell due, Askins wrote to the general agent of the company as follows:

"Please get me what you can on my policy, as I haven't got the money to pay my premium that is now about due. If you will attend to it for me at once, I will appreciate it very much."

On July 21, 1921, the general agent replied to this letter of July 19th, as follows:

"Replying to yours of the 19th, beg to advise that you have until August 24th to pay this premium of $48.09. You can then pay $12.09 cash and sign the inclosed note for the $36."

On July 29, 1921, Askins replied to this letter of July 21st, as follows:

"Your favor of July 21 received with note to sign for $36 and cash $12.09. I have the $12.09 to send; as for the note, I might have the $36 at the end of 60 days or I might not. There is kind of a money panic down here in Hartsville. I was under the impression that I could borrow some more on my policy for a longer time. However, let me know what I will have to do."

On August 1, 1921, the general agent replied to this letter of July 29th, as follows:

"We have your favor of the 29th and note what you say regarding the payment of premium and note for sixty days.

"Please send us the $12.09 and sign the note for $36, and when the note comes due you can pay $12 more and renew the note for $24 for three months more and when the $24 comes due you can pay $12 and renew the note for three months for $12 more. *In other words, you will be paying the premium quarterly.* There will be no doubt but what we can arrange to your entire satisfaction the payment of the note when it comes due."

Thereafter Askins remitted in cash the $12.09, referred to in the general agent's letter of July 21st, and forwarded with the cash his note for $36, of which the following is a copy:

"30845.

"$36.00                                                July 25th, 1921.

"Three months after date for value received, I promise to pay to the Columbia National Life Insurance Company, or order, thirty-six dollars with interest from the date at 6% per annum, at the office of said company at Maxton, N. C., being balance the premium due July 24, 1921, on policy No. 30845 issued by said company.

"This note shall be a lien upon the policy in event of my death before it is paid and given with the full knowledge and intent on my part *that if it is not paid when due, without grace, said policy shall, without further notice become void* and the insurance thereunder terminate as of the date to which premiums have been paid in cash."

The insured did not meet the note for $36, due on October 25, 1921, and the record does not disclose any communication between him and the company in the meantime. The insured died on November 15, 1921, and this action was instituted, after proofs of death and refusal by the company to pay more than the paid-up insurance, $11, on May 1, 1922.

The complaint was in the usual form. The defendant answered, admitting the issuance of the policy, the death of the insured, the proofs of death, the demand for and refusal of payment, set up the loan of $332.77 on August 16, 1920, and claimed that, by reason of the provisions in the policy and in the note of July 25, 1921, for a part of the premium then due, the nonpayment of the said note at its maturity, October 25, 1921, caused the policy to lapse and become effective automatically for paid-up insurance in the sum of $11, which was rendered to and refused by plaintiff.

On August 19, 1921, the insured remitted to the company his check for $12.09 with the note for $36.

On August 23, 1921, the company transmitted to the insured a statement showing that the *annual* premium of $48.09, due July 24, 1921, had been settled by the payment of $12.09 cash and the delivery of the note for $36 due October 25, 1921.

By consent the case was referred to J. S. McInnes, Esq., probate judge, as master, to hear and determine all issues of law and fact. He reported in favor of the plaintiff, taking the position that the letter of the general agent, dated August 1, 1921, in which he proposed that the insured should pay $12.09 cash and give his note for $36 for 60 (90?) days, with the option to renew it for $24 for 90 days upon payment of $12 and for 90 days more upon a like payment, constituted a change in the original contract for annual payments of premium, making the premium thereafter payable quarterly, that by that arrangement the quarterly payment of $12 included in the note for $36 became due on October 25th, and that, as the insured died within 31 days of grace thereafter, the policy was in force at the time of his death.

Upon exceptions to this report, his Honor, Judge Dennis, confirmed the report and rendered judgment in favor of the plaintiff for $1,000, with interest at 7 per cent. from November 15, 1921, less the amount of the policy loan $332.77, with interest at 5 per cent. from August 16, 1920, and the note $36, with interest at 6 per cent. from July 25, 1921. From this order and judgment the defendant has appealed.

It presents a singular situation when the counsel for the plaintiff disagrees with the conclusion of the master in his favor, and stoutly maintains that there was no such new agreement and that the insured was acting under the terms of his policy. He says:

"The appellant seeks to take the position that the master and the Circuit Judge reached the conclusion that there was a new contract made between the parties in the negotiations

with reference to the payment of $12.09 and the execution of the note for $36.   *This position is clearly a misapprehension.*"

From a reading of the master's report, I cannot see that he based his conclusion upon any other ground than that a new contract had been made, changing the payments of premiums from annually to quarterly:

"Reading these provisions in connection with the letter of the general agent quoted above (August 1, 1921), *it seems to me that this amounts to a change in the contract as to the payment of premiums and changes the premium from being paid annually to quarterly.*"

Notwithstanding the contention of counsel for the plaintiff, the controlling issue in this appeal, as I see it, is the correctness of the master's ruling that the note and the letter constituted a new contract, which gave the insured the right to pay the premium due July 24, 1921, quarterly, the first installment on October 25, 1921, with the consequent 31 days of grace.   In other words, shall the $12 payment be considered as premium due on that day, or as a payment upon the note, the conditions of its renewal for the unpaid balance?   If it can be considered as a premium, the following paragraph in the policy will control in allowing the 31 days of grace, and, the insured having died within that period, the policy is good for the amount of insurance:

"Thirty-one days' grace is allowed for the payment of all premiums after the first during which the policy remains in full force."

The master held, as stated above (which finding was confirmed by the Circuit Judge), that the effect of the note of July 25, 1921, for $36, the amount of the annual premium due on July 24, 1921, $48.09, less the cash payment of $12.09, taken in connection with the letter of the general agent of August 1, 1921, converted the policy from one providing for *annual* premiums, into one providing for

*quarterly* premiums, and that consequently the days of grace clause above quoted applied.

With this conclusion I do not agree, for the reasons which follow, the transaction in my opinion dealing solely with the annual premium due on July 24, 1921, which the insured could not meet, and was entered into for the accommodation of the insured; the payment of $12 not in any sense representing a premium, but a payment upon the $36 note at its maturity, as a condition of its renewal for the balance $24, for 90 days. It seems to me that this conclusion is inevitable from both the provision in the policy and the express terms of the note itself. The policy provides:

"Upon default in payment of any premium or note given therefor, this policy shall lapse, and the company's only liability shall be such, if any, as is hereinafter provided"— which was for paid-up insurance.

The *note* provides, after stating that the note was given for the "balance (of) the premium due July 24, 1921, on policy No. 30845 isued by said company":

"This note shall be a lien upon the policy in event of my death before it is paid and is given with the full knowledge and intent on my part *that if it is not paid when due, without grace, said policy shall, without further notice, become void* and the insurance thereunder terminate as of the date to which premiums have been paid in cash."

The note is dated July 25, 1921, but manifestly it was executed after the date of the general agent's letter of August 1, 1921, and doubtless upon the faith of the assurances conveyed in that letter. It is but fair to the insured that the two be construed together.

Strictly speaking, the note is the consummation of the negotiations between the parties, and cannot be varied even by the letter which accompanied it and was its inducement. But I shall consider the matter as if the plaintiff had asked for and obtained a reformation of the note, so as to include

the provisions contained in the letter of August 1, 1921. The condition in the note would then read thus:

"This note shall be a lien upon the policy in event of my death before it is paid, and is given with the full knowledge and intent on my part that if it is not paid when due, without grace, *or is not renewed by the payment of $12 in cash and the execution of a new note for $24 payable three months thereafter,* said policy shall, without further notice, become void, and the insurance thereunder terminate as of the date to which premiums have been paid in cash."

This is certainly as much as the plaintiff could possibly ask. As thus reformed, the plaintiff cannot escape from the lapse of the policy consequent upon the failure of the insured to comply with the alternative conditions named in the note.

The contention that the note and the letter should be construed as a conversion of the policy from one calling for annual payment premiums to one calling for quarterly payment premiums, hangs by the exceedingly slender thread of the expression in the letter of August 1, 1921, "in other words, you will be paying the premium quarterly," an expression simply indicating the *result* of the compliance by the insured with the condition as to renewals and part payment. It does not in any way indicate an intention to change the terms of 'the policy; for certainly if the insured had complied with those conditions and lived until July 24th of the following year, he would have had to pay the annual premium then due, or make a similar agreement as to its extension. It seems illogical to permit such an expression the effect of an interpretation in direct conflict with the terms of the note, which provide *that there shall be no period of grace,* as to payment.

It is impossible for the general agent's letter of August 1, 1921, suggesting a cash payment of $12.09 and a note for $36, payable October 25th, to have been intended as a change of the policy from annual to quarterly premiums,

or otherwise than as an expedient to tide over the payment of the annual premium which the insured was unable to meet.   If it had been intended as such a change, on October 25th, ·there would have been due only the quarterly premium to $12.61, *and not a note for* $36 with interest at 6 per cent., amounting to $36.54.   Assuming that the $12.09 in cash, under the claimed construction, represented the first quarterly premium, nothing more would be due until the second quarterly premium fell due on October 25th.   By giving the note therefore for $36, with interest at 6 per cent., payable October 25, the insured assumed a greater burden than the alleged new agreement imposed upon him, and, further than this, the insured agreed by the terms of the note that, upon his failure to pay, not the alleged quarterly premium of $12.61, but the $36 note with interest, the policy should lapse *without grace*.   Both considerations show the absolute inconsistency of the claim that the transaction constituted a change in the terms of the policy.   If the change was made, why provide for the payment of $36.-54, when only $12.61 was due?  Or why provide for a lapse of the policy upon failure to pay the note with interest, when, if the policy was changed to quarterly premiums, he had 31 days thereafter in which to pay the $12.61?

At the foot of the "Table of Loan and Surrender Values," found on the third page of the policy, provision is made for a quarterly premium of $12.61, to which would have to be added $.12, which is about one-fourth of the additional premium of $.50 to be paid under the disability clause added to the foot of the policy; so that the quarterly premium would be $12.73 or $.73 more than the insured was to pay under the agreement between him and the company's general agent.   This difference of $.73 per quarter amounts to $2.92 per annum.   Therefore, in order to sustain the finding of the judge of probate, which was approved by the Circuit Judge, it is necessary to hold that the company was bound to accept a quarterly premium which amounted in one year

31—S. C.—139

to $2.92 less than the premium provided for by the policy.

It is therefore manifest that there was no intention to change the premium from an annual premium to a quarterly premium, but merely to permit the payment of the annual premium then due, in four installments, if the insured should so elect. Any other conclusion would not only be unreasonable, but would be in conflict with the express stipulation in the policy sued on, that no modification thereof shall be made except over the signature of the president or secretary of the company, of the waiver of which there is no evidence.

In effect, respondent contends that the 31 days of grace allowed for payments of premiums, must be given upon premium notes. A sufficient answer to such contention is that the note, signed by the insured, expressly stipulates that it is not subject to grace. It is an extension of the period of grace, as to $36, for two months longer than the insured would have had under the policy. This exact question has been recently decided adversely to such contention in the case of *Southland Life Insurance Co. v. Hopkins* (Tex. Com. App.) 244 S. W., 989, reversing (Tex. Civ. App.) 219 S. W., 254. In the case cited, the insured paid the third premium by a note due October 28th, without grace. The note was like this. The insured died on October 29, one day after the maturity of the note, without paying the same. In a suit on the policy, the plaintiff contended that, as the statute and the policy required 31 days of grace for payment of premiums, similar grace must be allowed upon premium notes, but the Court held to the contrary, saying:

"When the policy is kept alive during the grace period provided therein, the insured has received all the indulgence he has contracted for, and any further extension of time is but additional grace or indulgence, and cannot be extended by mere implication beyond the time expressly contracted for." This exact point "was decided in * * * *Schmedding v. Northern Assur. Co.,* 170 Mich., 528; 136

N. W., 361. * * * To hold otherwise would be to punish the respondent for its apparent attempt at fairness in extending the grace."

It may be contended, under the case of *Brown v. Insurance Co.,* 114 S. C., 202; 103 S. E., 555, that the respondent was not bound by the provision in the premium note that failure to pay the same when due would render the policy null and void and that the insurance thereunder would terminate as of the date to which premiums had been paid in cash; but the *Brown case* does not apply here, because in that case the policy did not contain a provision that, if a note given for a premium be not paid at maturity, the policy should be forfeited, whereas in this case the policy so expressly stipulates. In the *Brown case* the Court said:

"The insured did not pay the semiannual premium when it became due on the 25th of February, 1919, but paid the sum of $5.19, and applied in writing for an extension of 60 days, and further requested the defendant to accept his note for the balance of said premium, to wit, the sum of $5. The defendant accepted the note of the insured for that sum, but it was not paid within the 60 days. The note contained the provision 'that the failure to pay this note when due shall, without notice to any party or parties interested therein, render said policy *ipso facto* null and void.' The policy *itself does not contain a provision that in case a note be given for the premium, and be not paid at maturity, the policy shall be forfeited.* * * * The insured and the insurer could not impair the rights of the plaintiff under the policy, by a subsequent contract to which she was not a party." (Italics added.)

In the case at bar, the policy contains the following language:

"Upon default in payment of any premium or note given therefor, this policy shall lapse, and the company's only liability shall be such, if any, as is hereinafter provided."

It is therefore clear that there was no attempt on the part of Mr. Askins and the insurance company to impair the rights of the beneficiary under his policy, by a subsequent contract to which she was not a party. She is a party to the policy contract, otherwise she could not sue, and such contract expressly stipulates that the policy shall lapse if a premium note is not paid at maturity. She cannot claim under the policy, and against it at the same time. In the *Brown case* the plaintiff claimed under the policy and not against it, because there was no provision in the policy that it should lapse upon failure to pay a premium note.

It is insisted that there cannot have been a lapse of the policy on account of the failure of the insured to pay the $36 note when due, for the reason that the company made no demand upon the insured for payment. It is a sufficient answer to this position to refer to the terms of the note, which require the insured to pay the note "at the office of the company at Maxton, N. C.," on October 25, 1921, and "without grace" and "without further notice." It was clearly incumbent upon the insured to comply with these terms, in order to escape the lapsing of the policy.

In a note to the case of *Continental Ins. Co. v. Stratton* (Ky.), 8 A. L. R., 391, at page 403, it is said:

"Where both the policy and a premium note provide that if any instalment shall not be paid promptly when due, the policy 'shall be suspended, inoperative, and of no force or effect until' paid, no affirmative action by the insured is essential to a suspension, and no recovery can be had for a loss occurring during a default."

Also:

"And, where both the policy and a note given for a premium provide that the policy shall become void, * * * it has been held that the insurer is not liable for a loss occurring while the policy remained suspended by a default,

although the insurer took no affirmative action"—citing many cases.

In *Gleason v. Ins. Co.,* 127 Tenn., 8; 151 S. W., 1030, it is· held that, where the poilcy provides that on failure of the assured to pay a premium note when due, the policy shall lapse, and the note stipulates that default will render the policy void, failure to pay as provided defeats recovery for loss occurring during a default.

It seems to me therefore perfectly clear that the policy had lapsed by the failure to pay or renew the $36 note on October 25, 1921, and that the judgment should have been for the defendant company.