THE STATE, EX REL. SQUIRE, SUPT. OF BANKS, APPELLEE, *v.* MILLER ET AL., APPELLANTS.

(Decided February 20, 1939.)

*Mr. Thomas J. Herbert,* attorney general, *Mr. John M. Woy* and *Mr. Dudley F. Smith,* for appellee.
*Messrs. Geer, Lane & Downing,* for appellants.

OVERMYER, J.   This is an appeal on questions of law from a finding and judgment of the Court of Common

Pleas of this county in favor of appellee, the Superintendent of Banks of Ohio, plaintiff below, and against appellant, The Acorn Supply Company, for the sum of $11,800. The cause was submitted to the court below without the intervention of a jury.

The facts are practically undisputed, and our problem, as was that of the trial court, is to apply the law to the facts shown by stipulation of the parties, a number of exhibits and some testimony. The operative facts are as follows:

In 1927, and theretofore, The Acorn Supply Company was a corporation for 'profit in Toledo, Ohio, having 1500 shares of its capital stock outstanding, of which Theodore A. Miller, George D. Palmer, R. R. Blair, L. D. Gotshall and I. W. Gotshall, the officers and, with M. M. Blair, the directors of the company, owned the greater part, though the record does not disclose exactly how many of the outstanding shares were owned by the directors, nor who owned the remainder. The evidence shows that at the stockholders' meeting of 1928 the directors-officers-stockholders voted 1187½ shares; in 1929, 1257 shares; in 1930, 1434 shares; and in 1931, 1186½ shares. At none of said meetings was all of the outstanding stock represented.

In the years 1927, 1928 and 1929, by resolutions adopted in each of those years by the board of directors, appearing in the corporation minutes, the officers-directors voted themselves each a "salary" for the year in various amounts as follows:

| Date | T. A. Miller, Secty. | Geo. D. Palmer, V. Pres. | R. R. Blair, Treas. | L. D. Gotshall, Pres. | I. W. Gotshall, V. Pres. |
|---|---|---|---|---|---|
| 11/30/27 | $4,000 | $4,000 | $4,200 | $4,800 | $3,300 |
| 11/30/28 | 5,800 | 4,000 | 4,200 | 4,800 | 3,300 |
| 11/30/29 | 2,000 | 1,000 | 1,000 | 1,200 | 750 |
| | $11,800 | $9,000 | $9,400 | $10,800 | $7,350 |

Beginning in 1927, separate ledger accounts were set up in the books of the corporation for the above designated items and the respective amounts were credited each year to the respective officers-directors therein. None of such sums or any part thereof was ever actually paid to said directors, or any of them, according to the record. Director T. A. Miller received also a salary of $5,000 per year as manager of the company, which was paid to him on monthly vouchers. Each of the directors, except M. M. Blair, was also an officer of the company other than a director.

In July, 1928, T. A. Miller, one of the aforesaid directors and secretary of the company, executed his note and made a personal loan of $25,000 from The Commercial Savings Bank & Trust Company of Toledo, Ohio, and on August 18, 1930, upon a renewal of such note to said bank, he executed to the bank, as additional collateral, the following assignment prepared by the bank relating to his account as a director on the books of The Acorn Supply Company, as shown in the above tabulation:

"Assignment of Interest.

"I, Theodore A. Miller, of Toledo, Lucas county, Ohio, for valuable consideration to me paid, receipt of which is hereby acknowledged, do hereby assign, set over, transfer and convey to The Commercial Savings Bank and Trust Company of Toledo, Ohio, its successors or assigns, all of the right, title and interest which I have or may acquire in and to a part of a certain fund due to me from The Acorn Supply Company, a corporation with its principal place of business in the city of Toledo. The said fund is carried by the said corporation as undivided profits in the amount of forty-eight thousand, three hundred fifty dollars ($48,350), my part of which is eleven thousand, eight hundred dollars ($11,800).

"I do assign the said claim to said The Commercial Savings Bank & Trust Company, its successors or assigns, and direct said The Acorn Supply Company to make all payments and distribution from the said fund to the said bank.

"To witness this assignment I sign my name at the end hereon on this 19th day of August, 1930.

"(Signed) Theodore A. Miller.

"Witness:

"H. F. Slusser.

"H. J. O. Seeger.

"The Acorn Supply Co. does hereby consent to the said assignment and agrees to pay the assigned funds to The Commercial Savings Bank & Trust Company, its successors or assigns, upon distribution.

"The Acorn Supply Company,<br>"(Signed) By L. D. Gotshall, President<br>"Theo. A. Miller, Secy."

In August, 1931, The Commercial Savings Bank & Trust Company was taken over by the Superintendent of Banks of the state of Ohio for liquidation, and, the note of Miller being a demand note and unpaid, the superintendent made demand for payment thereof of Miller and The Acorn Supply Company, and same not being paid, the superintendent, on October 17, 1932, filed an action thereon against Miller and each of the other officers-directors of The Acorn Supply Company and The Acorn Supply Company. In the petition and a later supplemental petition, judgment is asked against The Acorn Supply Company in the sum of $11,800, because of the alleged acceptance by the company of the aforesaid assignment by Miller to the bank of that sum.

Issues were joined and on trial a finding and judgment were entered for the plaintiff Superintendent of Banks as hereinbefore noted. The Acorn Supply Company appeals from that judgment and the complaints,

though several in number, may be summarized as charging an erroneous finding and judgment under the law and facts.

The appellant, The Acorn Supply Company, contends, first, that the resolutions adopted by the directors of the company voting themselves the "salaries" or "compensation," or "bonus" or "gratuities"— whatever they may be called—as above set forth, were without authority of law and were and are a nullity; that the board of directors at no time during 1927, 1928 and 1929 consisted of more than six members, and that in each instance such resolution was adopted by the directors who were therefore the direct beneficiaries of such resolution; that although said accounts on the books of the company, showing such "salaries," were included and presented in the annual financial reports at the annual stockholders' meetings of the years aforesaid, and accepted, nevertheless all of the outstanding stock was not represented at said stockholders' meetings and there was no express authorization by the charter or by the non-represented stockholders to such act of the directors; that under authority of *Briggs* v. *Gilbert Grocery Co.*, 116 Ohio St., 343, 156 N. E., 494, and the authorities therein cited with approval, the resolutions referred to were illegal and void.

If this contention is correct, it would follow that there could be no recovery by the bank on the Miller assignment, or on the company's endorsement on said assignment, for in such event Miller had nothing to assign and the officers who signed it for the company had no authority from the corporation to thus dispose of the company's assets.

The second contention of appellant is that the endorsement of the company on the Miller assignment to the bank is not an absolute one; that is, that the bank by said endorsement did not acquire an absolute right to the Miller fund or account—only a conditional

right when and if such fund is "distributed," and that same never having been distributed, no right to same has ever vested in the bank.

Appellee contends, at some place in his brief, that the directors did represent all of the stock at the directors' and the stockholders' meetings, and at other places that they represented "practically all of the stock." The minutes of the meetings, which are in evidence, do not show all of the stock represented at any of the meetings, but they do show the representative of an estate then owning 495 shares, who was also attorney for the company, objecting to the adoption of one of the aforesaid "salary" resolutions at a directors' meeting. Director Miller, who in 1928 owned 15 shares, acquired the 495 shares owned by the estate referred to, and on February 1, 1929, and thereafter, he owned 510 shares.

Appellee further contends that the language of the endorsement placed by the company on Miller's assignment to the bank was unqualified and unconditional and in the nature of a guaranty of payment.

There is no claim made in the instant case on the basis of *quantum meruit* and we are of the opinion that the facts here bring the case within the spirit, if not strictly within the letter, of the decision in the *Briggs case, supra,* and the authorities cited in the opinion in that case. In the instant case, the members of the board, with the exception of M. M. Blair, voted themselves salaries, as shown by the record. If the resolutions were void as to one, they would be void as to all, for in no instance did a lawful quorum enact the resolution. If the directors had owned or represented all the outstanding stock, the conclusion might be otherwise, but the record shows that all stockholders were not voting on the question and there was therefore no "express authorization by the stockholders," as is required by the quotation from Corpus Juris cited with approval in the opinion of the Su-

preme Court in the *Briggs case,* nor is any claim made that the charter of the corporation gives such authorization.  The citation follows:

"An officer is without authority to fix or increase his own salary.  Directors are precluded from fixing, increasing, or voting compensation to themselves for either past or future services by them as directors or officers, unless they are expressly authorized to do so by the charter or by the stockholders.  The director who claims compensation for his services, being disqualified from voting on the question, if he is necessary to make up a quorum of the board, or if his vote is necessary to the result, the resolution will be void."  14A Corpus Juris, 143, Section 1908.  See also 7 Ruling Case Law, 466, Section 447, cited in the *Briggs case, supra,* and *Cleveland Ptg. Ink Co.* v. *Phipps,* 6 Ohio Law Abs., 542.

Appellee contends that the acts of the directors in question would not in any event be wholly void, but voidable, and that the stockholders approved such acts by their conduct in hearing the financial reports containing the items of account in favor of the directors, read at the annual stockholders meetings, and accepted the reports.  While the minutes of the stockholders' meetings for the years 1927, 1928 and 1929, in no case show all the stock as being voted, neither do they show that any stock was voted except by officers and directors, except at the annual meeting of March 19, 1928, when F. H. Geer, administrator, voted 495 shares, and he was the administrator of an estate, and attorney for the company, who, at a directors meeting on November 25, 1929, objected to the directors voting themselves salaries for that year.

If the acts of the directors in the respects discussed were illegal and void, as we think, under the authorities above cited and the facts above stated, they were, then no estoppel would arise, for no act of the corpo-

ration or the stockholders subsequently could give those acts vitality or validity.

The minutes referred to show that at the annual stockholders' meeting held February 1, 1929, at which five of the above directors were the only stockholders present, voting 1257 shares, the following occurred:

"The auditor's report for the fiscal year ending Nov. 30, 1928 (carrying the accounts referred to), was presented and discussed. On resolution of R. R. Blair, seconded by M. M. Blair, it was resolved that the audit be accepted and placed on file."

This was voted. At the annual stockholders' meeting held February 10, 1930, at which all six directors were the only stockholders present, voting 1434 shares, similar action was taken for the preceding year. We do not think such action could bind all stockholders as an "approval" or ratification of all that such report contained, or be a specific approval of the acts of the directors referred to herein.

Even though the court should be in error in its opinion that the resolutions referred to were a nullity and void, we are clearly of the opinion that appellee is not entitled to maintain this action against the company on the basis of the company's endorsement on the Miller assignment hereinbefore set forth.

In that assignment Miller assigned to the bank "all of the right, title and interest which I have or may acquire in and to * * * and direct said The Acorn Supply Company to make all payments and distribution from the said fund to the said bank." The company's endorsement on the assignment states that the company consents "to the said assignment and agrees to pay the assigned funds to The Commercial Savings Bank & Trust Company * * * upon distribution."

More than six months before the assignment was executed by Miller to the bank and the company's endorsement placed thereon, the directors of the com-

pany executed among themselves the following agreement:

"Agreement:

"This agreement made and entered into at Toledo, Ohio, this 31st day of January, 1930, witnesseth:

"Whereas, the directors of The Acorn Supply Company at a meeting regularly called and held, authorized and directed payment of salaries to the undersigned as follows:

"For the year 1927

| | | |
|---|---:|---:|
| "L. D. Gotshall, president........... | $4,800 | |
| "I. W. Gotshall, vice president....... | 3,300 | |
| "Geo. D. Palmer, 2nd vice president.. | 4,000 | |
| "Roy R. Blair, treasurer........... | 4,200 | |
| "Theo. A. Miller, manager.......... | 4,000 | $20,300 |

"For the year 1928

| | | |
|---|---:|---:|
| "L. D. Gotshall, president........... | $4,800 | |
| "I. W. Gotshall, vice president....... | 3,300 | |
| "Geo. D. Palmer, 2nd vice president.. | 4,000 | |
| "Roy R. Blair, treasurer........... | 4,200 | |
| "Theo. A. Miller, manager.......... | 5,800 | $22,100 |

"For the year 1929

| | | |
|---|---:|---:|
| "L. D. Gotshall, president........... | $1,200 | |
| "I. W. Gotshall, vice president....... | 750 | |
| "Geo. D. Palmer, 2nd vice president.. | 1,000 | |
| "Roy R. Blair, treasurer......... | 1,000 | |
| "Theo. A. Miller, manager........... | 2,000 | $5,950 |

"Whereas, it is desired that payment shall not be made to any of the above-named without proportional payments to the other officers above named and as the financial condition of The Acorn Supply Company shall justify payments:

"It is agreed by and between the undersigned for themselves, their heirs, legal representatives and assigns that no payments shall be made to the under-

signed, or any of them, by The Acorn Supply Company, on account of any of the above-mentioned items, without approval of the board of directors, without payment at the same time to the balance of the above-named officers, being the undersigned, in proportion to the amount due on the books of The Acorn Supply Company for any period above mentioned shall bear to the total amount due all of the undersigned for the same period; that is to say, no payments shall be made to any of the undersigned, their respective heirs, legal representatives or assigns, excepting payments shall be made at the same time to all of the undersigned, their heirs, legal representatives or assigns in like proportion to the total amount due for the period. No payments are to be made until the same may be accomplished without serious financial embarrassment to The Acorn Supply Company. No interest shall be allowed or paid on account of any of the above items.

"In witness whereof, this agreement has been executed, in consideration of the mutual benefit accruing, accrued and to accrue to each of the undersigned, on the day and year first above written.

"Signed: Roy R. Blair,  Theo. A. Miller,
"L. D. Gotshall,  George D. Palmer,
"I. W. Gotshall,  Merrit M. Blair."

While the company was not a party to the foregoing contract, it was made by the individuals for the benefit of the company, and it had the effect of qualifying or conditioning whatever rights, if any, they had against the company on their several "salary" or "bonus" accounts. The consideration moving to each signer was the mutual promises of all of the others made in behalf of the company in which they, as stockholders, owned the greater part of the stock.

The court is satisfied from the evidence before us, from the language used by the bank in preparing the

assignment, and from the testimony of the representative of the bank who drew it, and that of Miller, that the bank had before it and knew of the aforesaid agreement between the individual directors signing same, and that by the language of said agreement and the oral testimony referred to, it is clear that the bank considered the assignment and the company's endorsement as conditional and not absolute in the nature of a guaranty of payment.

We think the conditions provided in the agreement were known to the bank; that the conditions as to whether any part of said accounts could be paid without financial embarrassment to the company, and similar conditions, were decisions reserved entirely to the company in the first instance, of which the bank had knowledge before executing and accepting the assignment referred to. No part of the accounts ever was paid, and the board of directors never ordered any payment or distribution of said accounts.

As between the parties to this action, no virtue attaches to the resolution of the board of directors, including Miller, adopted July 13, 1932, whereby it sought to transfer the above-mentioned accounts from the directors to the corporation. The bank had been closed and in the hands of the Superintendent of Banks nearly a year before that date, and any right the bank had in the premises would have been fixed.

The record shows that in 1935, director T. A. Miller took voluntary proceedings in bankruptcy, and his note to the bank was scheduled, and from the obligation of it he was discharged. We are not advised, however, what disposition, if any, has been made of his 510 shares of stock in the company, which, according to the record, is still solvent. These are matters not in issue here and will not be further discussed.

The court below was in error in overruling the motion of defendant for a directed verdict, and the judg-

ment will be reversed and final judgment entered for appellants.

*Judgment reversed and final judgment for appellants.*

CARPENTER, J., concurs.
LLOYD, J., not participating.