# THE DAVIS COMPANY, Plaintiff in Error, v. HARTFORD ACCIDENT & INDEMNITY COMPANY, Defendant in Error.—425 S.W.(2d) 776.

Western Section. September 18, 1967.

Certiorari Denied by Supreme Court February 5, 1968.

Rehearing of Petition for Certiorari Denied March 15, 1968.

34

S. Shepherd Tate, James C. Warner, and Martin, Tate & Morrow, Memphis, for plaintiff in error.

John S. Porter, W. J. Michael Cody, and Burch, Porter & Johnson, Memphis, for defendant in error.

BEJACH, J. This cause involves an appeal in error by The Davis Company from a verdict and judgment in favor of Hartford Accident and Indemnity Company awarded on peremptory instruction of Judge Howard J. Vorder Bruegge in the Circuit Court, Division VII, of Shelby County, Tennessee. In this opinion, the parties will be referred to, as in the lower court, as plaintiff and defendant, or called by their respective names, the defendant sometimes called merely Hartford.

Plaintiff's declaration alleged that for a valuable consideration defendant issued to plaintiff, on or about October 17, 1960, a blanket "Position Bond" indemnifying plaintiff up to $20,000 against the loss of money or other property sustained through any fraudulent or dishonest act of any employee of plaintiff; that while the bond was in force, an employee of plaintiff, Neville Maurice Stevens, did by fraudulent and dishonest act

appropriate, embezzle and steal from plaintiff the sum of $5,000 on each of two occasions, March 19, 1964 and October 19, 1964; that plaintiff gave timely notice of the losses to defendant and complied with all other provisions of the bond, but that defendant failed and refused to pay the amount owed to plaintiff.

Defendant filed its pleas and special pleas alleging that it was not indebted to plaintiff in any amount, that it did not contract to repay to plaintiff the loss described in the declaration, and that the liability of the defendant under the bond terminated and was cancelled as to Stevens under the provisions of sections 6 and 12 of said bond because Stevens had, prior to the losses alleged in the declaration, caused a loss of money or other property to plaintiff through Stevens' fraudulent or dishonest acts, which acts and losses therefrom were known to plaintiff and its officers in 1963.

Plaintiff filed a replication alleging that prior to the appearance of the losses sued upon, defendant did, through its authorized agent and with full knowledge of the alleged prior loss in 1963 caused by Stevens, waive as to Stevens the provisions of sections 6 and 12 of the bond; that immediately following the occurrence of the alleged prior loss in 1963, plaintiff did give notice of the occurrence, including the facts thereof, to Marshall Yandell, the duly authorized agent of defendant; that defendant never thereafter notified plaintiff that the bond was forfeited or cancelled as to Stevens, but that defendant's agent, Yandell, did assure plaintiff that the coverage afforded plaintiff under the bond continued as to Stevens; that in reliance upon the foregoing, plaintiff kept Stevens in its employ in a position of trust and confidence, and did not secure or attempt to secure other

surety bond coverage on Stevens; that defendant waived any right to declare a forfeiture or cancellation of the bond on account of the alleged prior loss, and is now estopped to rely upon the alleged prior loss and the provisions of 6 and 12 of the bond to defeat plaintiff's replication, and on these issues the case was tried to the court and jury, the Honorable Howard J. Vorder Bruegge, presiding.

At the close of plaintiff's proof, the trial judge directed a verdict in favor of defendant. Subsequently, plaintiff seasonably filed a motion for new trial on the grounds that the Court had erred (1) in holding that as a matter of law, the doctrines of waiver and estoppel cannot be applied to section 6 and 12 of the bond; (2) in holding that as a matter of law, taking all the evidence most favorable to plaintiff, there is insufficient evidence from which a jury could find that the defendant had waived or was estopped to rely upon the sections 6 and 12 of the bond; (3) in holding that plaintiff's failure to read the bond was any reliance by plaintiff upon any acts of defendant which would constitute a waiver of the termination provisions of the bond or estop defendant from relying upon such provisions; and (4) in finding as a matter of fact that there is no way an insurance company would ever write a bond on Stevens, where there was no proof in the record to support such a finding.

Said motion for new trial was overruled, whereupon plaintiff prayed, was granted and perfected an appeal in the nature of a writ of error to the Western Section of the Tennessee Court of Appeals.

In this Court, as plaintiff in error, plaintiff has filed four assignments of error, which correspond with the four questions presented in the motion for a new trial.

The sole question which this Court has to consider is, however, whether or not the trial judge erred in granting the motion for a peremptory instruction to the jury.

Plaintiff's proof established that The Davis Company, a Tennessee corporation, was insured under a blanket "Position Bond", number 3141043, issued by defendant, Hartford Accident & Indemnity Co. of Hartford, Connecticut. This bond was in the principal sum of $20,000, issued October 17, 1960, effective August 15, 1960, and was renewed for a three year period effective August 15, 1963, at which time a renewal premium was paid. The bond was solicited by Marshall Yandell, agent for Hartford. Under the terms of the insuring agreement, Hartford "agrees to indemnify the insured against any loss of money or other property which the insured shall sustain through any fraudulent or dishonest acts or act committed by any of the employees acting alone or in collusion with others, the amount of indemnity on each of such employees being the amount stated in Item 3 of the declarations." Among the conditions and limitations of said bond are found the following provisions:

"Prior Fraud, Dishonesty or Cancelation

Section 6. The coverage of this bond shall not apply to any employee from and after the time that the Insured or any partner or officer thereof not in collusion with such Employee shall have knowledge or information that such employee committed any fraudulent or dishonest act in the service of the Insured or otherwise, whether such act be committed before or after the date of employment of the Insured."

* * * * * *

Cancelation as to any Employee

Section 12. This bond shall be cancelled as to any employee: (a) immediately upon discovery by the Insured or by any partner or officer thereof not in collusion with such Employee, of any fraudulent or dishonest act on the part of such Employee; or (b) at noon, standard time as aforesaid, upon the effective date specified in written notice mailed to the Insured. Such date shall be not less than 15 days after the date of mailing. The mailing by the underwriter of notice as aforesaid to the Insured at the address shown in this bond shall be sufficient proof of notice. Delivery of such written notice by the underwriter shall be equivalent to mailing.''

Marshall Yandell of D. A. Fisher & Company had been the insurance agent who had handled The Davis Company's insurance matters since about 1940, and Mr. T. B. Davis, president of plaintiff, dealt exclusively with Mr. Yandell on all insurance matters. At the time the bond in question was purchased, the principal position at The Davis Company, for which coverage was desired, was that of Office Manager, and Mr. Yandell was so advised.

During 1963, The Davis Company had in its employ an office manager by the name of Neville Maurice Stevens. Around the first of September, 1963, Stevens went to Mr. Davis, President of plaintiff, and advised him that he had withheld some cash from the company's cash drawer, and had charged himself on the company's books with the amount withheld. Stevens was in charge of the company's books and records. Stevens advised Mr. Davis that he had been having some personal problems, but that the problems were resolved. Mr. Davis was of opinion that Stevens had been doing satisfactory work for the company, and advised Stevens that the company would

retain him in its employ. At the beginning of the year, Mr. Davis had promised Stevens a bonus of $2,000 at the end of the year, and Mr. Davis determined in September that the bonus would be applied against the amount owed by Stevens, and that consequently the company would suffer no loss on account of Stevens' misconduct. Prior to employing Stevens, Mr. Davis had spent $600.00 for an investigation of Stevens by Ernst and Ernst, certified public accountants, as a result of whose report Mr. Davis had hired Stevens. On the same day that Stevens went to Mr. Davis and disclosed that he had withheld cash, Mr. Marshall Yandell, defendant's agent, was at The Davis Company on other business. Mr. Davis related the facts of the incident to Mr. Yandell and told Mr. Yandell that he wanted to give Mr. Stevens another chance, and that the company was going to keep Stevens in its employ, that the amount withheld by Stevens would be repaid out of the bonus which he would otherwise receive at the end of the year, and that the company was going to check to see that the amount with which Stevens had charged himself was the correct amount involved. Mr. Davis then called Mr. S. Herbert Rhea, certified public accountant, of the firm of Rhea and Ivy, plaintiff's accountants, and related to Mr. Rhea the facts which Stevens had told him, and the fact that the incident had been fully reported to Mr. Yandell. Mr. Rhea was requested to check into the matter to determine if the amount which Stevens had charged to himself was accurate. Mr. Rhea's investigation revealed that the amount charged was correct, and he so advised Mr. Davis about two weeks later. Mr. Rhea and Mr. Davis, at that time, discussed the fact that Mr. Yandell had been notified of the incident and told that there might be a possible loss. It was decided that Mr. Rhea would call Mr. Yandell to

give him the result of the investigation. Mr. Rhea did then call Mr. Yandell, identified himself, told Mr. Yandell that he knew Mr. Davis, had discussed the matter involving Stevens with him (Yandell), that Stevens had withheld $2,100, that Rhea and Ivy had checked out the amount Stevens had charged himself, and that it appeared to be the correct amount, that Mr. Davis was keeping Stevens on in the capacity of office manager, and that the amount withheld would probably be repaid out of the bonus which Stevens would otherwise receive. At or about the time of that telephone call, Mr. Rhea made a written notation upon his business records of the substance of his conversation with Mr. Yandell, as follows:

"I informed Marshall Yandell (at D. A. Fishers) re Reese and they are going to try to work it out so bond won't be cancelled Be sure and check this at year end Put on program."

We assumed that "re Reese" means "re Maurice".

Mr. Rhea recalled the conversation with Mr. Yandell, and while he did not recall the exact words used, he did recall that the memorandum was a correct recitation of the conversation. Mr. Rhea reported back to Mr. Davis that he had had a conversation with Mr. Yandell. Thereafter, Mr. Davis received no communication regarding the status of the bond with respect to Maurice Stevens from Marshall Yandell of D. A. Fisher, Inc., from the Hartford Accident & Indemnity Company, or from anyone else until November 1964 when he was for the first time, advised that Hartford took the position that the 1963 incident involving Stevens cancelled the bond as to him. During the fifteen months intervening, Mr. Davis was under the impression that the bond was still in effect, and Mr. Rhea of Rhea and Ivy received no further com-

munication regarding cancellation of the bond. As far as he and his firm knew, at the end of the year 1963, the bond was still in full force and effect as to all employees of The Davis Company. The bond was checked at the end of 1963 by Rhea and Ivy, and the work papers of Rhea and Ivy disclosed that there was no change in connection with the bond and that the premium had been paid. After the incident of 1963, Stevens continued in the employ of The Davis Company until November 2, 1964, when he was discharged. Following the discharge of Stevens, Mr. Davis learned that in March of 1964 and in October of 1964, Stevens had altered two checks of The Davis Company, totalling $10,000, so as to make them payable to himself, had negotiated these checks and had thereby embezzled $10,000 from The Davis Company. The claim was duly filed on the bond to recover the $10,000 loss, but the claim was refused. Suit was filed February 14, 1966 by The Davis Company to recover the amount of the loss.

The cause was tried December 6, 1966, and as stated above, at the close of plaintiff's proof, Judge Vorder Bruegge granted defendant's motion for a directed verdict.

The cause has been ably briefed and presented by counsel for both plaintiff and defendant.

Numerous cases, both from appellate courts of this State and from other jurisdictions have been cited and relied on by both plaintiff and defendant, but we deem it necessary to refer to only a few of these authorities. Counsel for plaintiff rely primarily on the doctrine of waiver and estoppel. On the other hand, the principal contention of counsel for defendant is that the doctrine of waiver and estoppel cannot be invoked to extend coverage of an insurance policy, and that applying that doc-

trine in the instant case would extend the coverage of the policy here involved.

In Miller v. Monticello Insurance Co., 50 Tenn.App. 363, 361 S.W.2d 496, this Court, in an opinion written by Judge Carney, held that the evidence was sufficient, in action on a fire insurance policy, to take to the jury the question of whether insuror's agent had waived restriction or limitation as to place of coverage and lulled insured into a sense of false security by leaving them under the impression that they were fully covered. From the opinion in that case, we quote, as follows:

"The defendant insurance company does not deny that the welding unit was a part of plaintiff's equipment and machinery insured against loss by fire under the policy issued by its agent, Mr. Brower. Its only defense is that the policy as issued by Mr. Brower limits coverage of the welding unit against loss by fire to the time it is actually inside the building described in the policy. This restriction or limitation of coverage is one which the defendant's agent could have waived. Maryland Casualty Co. v. McTyier, 1924, 150 Tenn. 691, 266 S.W. 767, 48 A.L.R. 1168.

The defendant's agent, Mr. Brower, did not contend that the plaintiffs had any actual knowledge that the welding unit or any of the other equipment was not covered against loss by fire unless destroyed or damaged while inside the building.

Under these circumstances we think a jury might well find that the defendant's agent, Mr. Brower, and therefore the company itself, waived the restriction or limitation of coverage and also lulled Mr. and Mrs. Miller into a sense of false security by leaving them

under the impression that they were fully covered under the terms of the policy which was issued." Miller v. Monticello Ins. Co., 50 Tenn.App. 363, 369-370, 361 S.W.2d 496.

In Henry v. Southern Fire and Casualty Co., 46 Tenn. App. 335, 330 S.W.2d 18, this Court held that the issue should have been submitted to the jury in a case where the insurance company's defense was that the damage for which claim was asserted was caused by a trailer not listed in insured's policy, even though insured had told insuror's agent, who was familiar with complainant's business, that he wanted full coverage on all of his equipment.

Counsel for plaintiff relys heavily on the case of United States Fidelity & Guaranty Co. v. Craig County Bank (10th Circuit Court of App., 1955), 227 F.2d 799, as authority for the proposition that, as a matter of law, the doctrine of waiver and estoppel may be applied specifically to sections 6 and 12 of the policy involved in the instant case. In the Craig County Bank case, the U. S. F. & G. Company had written a banker's blanket bond insuring the bank against loss sustained through any dishonest, fraudulent or criminal act of any of its employees. It further provided that the bond should be deemed terminated or cancelled as to any employee as soon as the bank should learn of any dishonest or fraudulent act on the part of such employee. An examination of the bank by the F.D.I.C. disclosed several irregularities in the handling of the affairs of the bank and the falsification of the records of the bank by one Hampton, the cashier of the bank. This information was conveyed to the directors of the bank and to the insuror by the bank examiner, but it appeared that no loss had been

sustained by the bank. The directors agreed to retain the cashier. All this information was furnished to the agent of the insuror, and, subsequently, one of the directors caused the agent to call the company to determine if the bond was still in effect as to the cashier. The director was advised that the bond was still in effect. Thereafter, the cashier misappropriated about $50,000 from the bank, and claim was filed on the bond. The insuror defended on the ground that the bond was terminated as to said cashier at the time of the discovery of the first irregularities. The bank contended that the insuror had, by its conduct, waived its right to rely on the automatic termination provision. Answering this contention, the U. S. Circuit Court of Appeals for the 10th Circuit, said:

"The entire course of conduct on the part of the bonding company indicated that it understood the bond was still in force and effect as to Hampton. With knowledge of all the facts which the directors had relating to termination of the bond in respect to coverage of Hampton, the bonding company's continued recognition of the validity and effectiveness of the bond constituted an implied waiver of its termination as to coverage of Hampton and worked an estoppel to assert exoneration of liability under the terms of the bond."

Counsel for defendant objects that the Craig County Bank case is not controlling, because, in that case, the U. S. F. & G. gave positive assurance that the cashier involved was still covered by its bond; whereas, in the instant case, the defendant Hartford Accident & Indemnity Co., through its agent, Marshall Yandell and D. A. Fisher & Co., only remained silent. We hold that under the facts and circumstances of the instant case, silence on the part of defendant Hartford Accident & In-

demnity Co. and its agent, Marshall Yandell, must be held to have had the same effect as did positive assurance in the Craig County Bank case. Indeed, our Supreme Court in an option written by Chief Justice Green, foreclosed this question when he said:

"If notice of a breach of condition is given to an insuror before a loss, good faith requires the insuror, if it intends to claim a forfeiture, to do so with reasonable promptness and to give the insured an opportunity to protect itself by procuring other insurance. Under such circumstances the insuror ought to speak." Cooley v. East & West Ins. Co., 166 Tenn. 405, 416, 61 S.W.2d 656, 660.

In the Cooley case, two months was held to be an unreasonably long delay, whereas in the case at bar, some fifteen months had elapsed.

Counsel for defendant relies heavily on the cases of Dees v. National Casualty Co., 17 Tenn.App. 183, 66 S.W. 2d 603; and McLain v. American Glanzstoff Corp., 166 Tenn. 1, 57 S.W.2d 554, in support of their contention that the doctrine of waiver and estoppel cannot be used to extend the coverage of an insurance policy. These cases are not applicable to the facts of the instant case. In the Dees case, the policy involved clearly and in unequivocal language provided that "No liability is assumed by the company for any accident, illness, or disease occurring or contracted prior to the date hereof or any death arising therefrom." In McLain v. American Glanzstoff Corp., the Supreme Court speaking through Mr. Chief Justice Green, said:

"The complainant relies on a rule approved by this court in Life & Casualty Insurance Co. v. King, 137

Tenn. 685, 195 S.W. 585, 589. In that case it was said, 'that where the insuror, at the time of the issuance of a policy of insurance has knowledge of existing facts which, if insisted upon, would invalidate the contract from its very inception, such knowledge constitutes a waiver of conditions in the contract inconsistent with the known facts, and insuror is estopped thereafter from asserting breach of such conditions.' ''

This rule has no application here.

If the policy had insured against total disability alone and insuror knew that complainant was sixty one years old at the time the contract was written, the insuror, under this rule, would be estopped to rely on a provision of the policy excepting from total disability benefits any insured over sixty years of age.

Here, however, the contract of insurance covers the life of the insured for the benefit of his wife, is a valid contract in that respect, not void from its inception. The contract merely excludes from its total disability benefits employees over sixty years of age.'' McLain v. American Glanzstoff Corp., 166 Tenn. 2-3, 57 S.W.2d 554.

Counsel for defendant undertakes to apply the decision in the Glanzstoff case to the facts of the case at bar by contending that the policy here involved remained in full force and effect as to all employees of The Davis Company, except Maurice Stevens. This contention is, however, in our opinion, unavailing, because, at the time the policy was written, Mr. Davis told Mr. Yandell that the principal person that he wished to have covered was the office manager; and, also, because in the instant case, Mr. Rhea, plaintiff's accountant, specifically discussed the

matter with Mr. Yandell, and was assured by Mr. Yandell that he would try to retain the policy in effect, which could only have been understood by Mr. Rhea and by plaintiff as continuing it so as to cover Stevens.

If this cause had been tried in the Circuit Court without the intervention of a jury, we would give judgment in this Court for the amount sued for by plaintiff; but, since the cause was tried before a jury, and one or both of the parties might still desire a jury, and also because defendant may desire to introduce proof in its behalf, all we can do is to reverse the cause and remand same for a new trial consistent with this opinion. The cause is accordingly, reversed and remanded to the Circuit Court of Shelby County, Tennessee. The costs of the appeal will be adjudged against the appellee, Hartford Accident & Indemnity Company. The costs of the lower court may await the outcome in that Court.

Avery, P.J. (W.S.), and Carney, J., concur.