IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 13, 2001 Session

## PACKAGE EXPRESS CENTER, INC., v. DOUG MAUND AND EMM-DEE DRUG COMPANY, INC., D/B/A ATHENS PHARMACY

**Direct Appeal from the Chancery Court for Greene County**
**No. 95-78     Hon. Thomas R. Frierson, II, Chancellor**

**FILED MAY 30, 2001**

**No. E2000-02059-COA-R3-CV**

In this breach of contract action, the Trial Judge enforced a non-compete provision by injunction and awarded damages. We reverse the issuance of the injunction and remand to establish reasonable damages for breach of the agreement.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., joined, and CHARLES D. SUSANO, JR., J., dissented in part and filed an opinion.

Kelli L. Thompson, Baker, Donelson, Bearman & Caldwell, P.C., Knoxville, Tennessee, for Appellants Doug Maund and Emm-Dee Drug Company, Inc.

William S. Nunnally, Rogers, Laughlin, Nunnally, Hood & Crum, P.C., Greeneville, Tennessee, for Appellee, Package Express Center, Inc.

**OPINION**

This breach of contract action arises from a business agreement between EMM-DEE Drug Company, Incorporated and Package Express Center, Incorporated. EMM-DEE is an Alabama corporation that operates Athens Pharmacy in Athens, Alabama. Doug Maund is the Chief Executive Officer of EMM-DEE and the pharmacist at Athens Pharmacy. Package Express Center

(PEC) is a Tennessee Corporation in the business of providing marketing and service programs to retailers for the shipment of packages via UPS.

On January 19, 1988, Athens Pharmacy entered into a contract with PEC, wherein PEC supplied equipment and supplies, along with training, for a one time charge of $500.00. Athens was required to report the number of packages shipped from the premises on a monthly basis and to pay 45 cents per package when each report was filed.

PEC provided an Operations Manual which detailed how to label a package, fill out a customer receipt, weigh the package and check that it is properly packaged, log the shipment in the UPS logbook, and generally deal with customers. PEC also provides a rate chart for calculating the cost to the customer, and these rates are based on UPS zones and the weight of the package, plus the 45 cents due PEC and the retailer's profit.

The Agreement as entered by the parties provides, in pertinent part:

2. The term of this Lease Agreement shall be continuous; provided that after one (1) year from the date hereof, either party may terminate this Agreement upon written notice thereof given to the other party at least sixty (60) days prior to said termination.

\* \* \* \* \*

7. If Lessee should fail to pay as herein provided when the same shall be due, or if the Lessee shall commit a breach of any of its obligations hereunder, then Lessor shall (1) have the right to enter the Lessee's premises where the Equipment is located during business hours and remove the Equipment; (2) recover all sums due; (3) receive the sum of Two Hundred and 00/100 Dollars ($200.00) as a removal and inconvenience fee; (4) recover reasonable attorney's fees, court costs, and interest (10% A.P.R.) should it be necessary for the Lessor to commence legal action to collect sums due under this Lease.

8. Upon termination or breach of this Agreement, Lessee covenants and promises not to engage in the business of providing the service of preparing packages for shipment in any location within the county, parish, or township where the center which is the subject of this Agreement or where any similar location leased to another Lessee by the Lessor for a period of eighteen (18) months from the date of breach or termination of this Agreement.

\* \* \* \* \*

10. The terms and provisions of this Agreement shall be interpreted in accordance with and governed by the laws of the State of Tennessee. . . .

11.    Venue in any litigation between the parties shall be in Greene County, Tennessee, and that parties hereto agree to submit to both the subject matter and in personam jurisdiction of the State of Tennessee.

The Parties operated under the Agreement for seven years.  On February 6 1995, Maund sent a letter to PEC stating:

As of February 6, 1995 we will no longer be using your service.  Please accept this as cancellation of agreement.  We have enjoyed the good service we have received during all these years.  Please notify us as to how you want your scales returned.

This letter was received by PEC on February 27, 1995, and an interoffice email of PEC, referencing Athens Pharmacy, acknowledged that "[e]ffective Feb. 6, 1995 this store will no longer be shipping."

After receiving this notice of termination from Athens, PEC entered into a contract with Jiffy Mart, which is located within three blocks of Athens Pharmacy.  Jiffy Mart began to ship packages for PEC on July 24, 1995, but was unsuccessful in this endeavor and mutually agreed with PEC to terminate their contract in early 1999. Athens Pharmacy had continued to provide shipping services to its customers after February 6, 1995, and these services continued through the date of trial.

On March 29, 1995, PEC filed this action against Doug Maund d/b/a/ Athens Pharmacy in Chancery Court for Greene County, Tennessee, and sought damages for breach of contract, as well as a temporary restraining order and temporary injunction prohibiting the defendant from preparing and shipping packages.  No injunction or restraining order was issued before trial.

The case was tried on March 23, 2000, and neither Maund nor his Alabama counsel were present, although he was represented by local counsel.  The Court rendered Judgment, which was entered on June 29, 2000, finding that the covenant not to compete was reasonable and enforceable, and granted PEC 18 months of prospective injunctive relief.  Also, the Court awarded damages for unpaid shipping fees from February 6, 1995 through December 1999 in the amount of $2,478.60, and attorney's fees in the amount of $10,025.00.

On appeal, defendant argues that the covenant was not enforceable, the Trial Court erred in applying the covenant not to compete prospectively for 18 months from the date of judgment, and erred in awarding money damages in addition to injunctive relief.

In this non-jury case, our review is *de novo* upon the record, with a presumption of correctness as to the Trial Court's factual determinations, unless the evidence preponderates otherwise.  Rule 13(d), T.R.A.P.; *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The Trial Court's conclusions of law, however, are accorded no such presumption. *Campbell*

*v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996).

The covenant not to compete in the Agreement between the parties required Athens Pharmacy to refrain from preparing and shipping UPS packages for customers for 18 months following the termination of breach of the Agreement. The Trial Court found this provision to be enforceable and not an unreasonable restraint on trade. Generally, covenants not to compete are disfavored in Tennessee because they are in restraint of trade. See *Vantage Technology, LLC v. Cross*, 17 S.W.3d 637, 644 (Tenn. Ct. App. 1999). In this case, the Agreement is referenced as a "lease agreement," but also contains language regarding a licensing of trademark and trade names for the benefit of the retailer. This brings the relationship closer to that of a franchise agreement, as asserted by PEC.

In an Annotation addressing the issue of covenants not to compete in the context of a franchise relationship, the term "franchise agreement" is defined as follows:

> As the term is used herein, a "franchise agreement" refers to those "chain style" operations in which the owner of a national brand product or service sub-contracts to permit a local dealer, or person, to use his brand name, and agrees to provide advertising, know-how, services, equipment, and other benefits to the franchisee for the purpose of running the business.

Robert A. Brazener, Annotation, *Validity and Construction of Restrictive Covenant Not to Compete Ancillary to Franchise Agreement*, 50 A.L.R.3d 746, 747 (1973). The above description is similar to the type of relationship that existed between PEC and Athens Pharmacy.

Tennessee cases involving employer-employee agreements not to compete are instructive. Several principles guide the determination of whether an employer has a business interest properly protectable by a non-competition covenant. Because an employer may not restrain ordinary competition, it must show the existence of special facts over and above ordinary competition. *Hasty v. Rent-A-Driver, Inc.*, 671 S.W.2d 471 (Tenn. 1984). The facts must be such that without the covenant, the employee would gain an unfair advantage in future competition with the employer. *Id.*

PEC argues that it has a protectable interest because it provided Athens Pharmacy with confidential and proprietary information along with training and equipment. PEC claims that through this training, Athens Pharmacy gained knowledge and skills that "they would not have known or would have been slow to learn without the assistance of PEC." However, the evidence does not support the Trial Court's determination that the information was confidential or proprietary.

The evidence shows that PEC's competitors operate their businesses the same way, providing the same type of information to their customers. PEC's rate charts may differ and not be available elsewhere, but are not trade secrets as they are merely the UPS rates plus a certain amount added for profit. This type of information does not rise to the level of creating a protectable interest.

PEC also claims that the "established customers of Athens identified the package shipping service with Athens, which made it difficult for PEC to woo those customers to an alternative retail establishment." In the employment context, an employer may have a legitimate protectable interest in the relationships between its employees and its customers. *See Vantage Technology v. Cross,* 17 S.W.3d 637, 645 (Tenn. Ct. App. 1998). The rationale is that customers associates the employer's business with the employee due to the employee's repeated contacts with the customer. *Id.*

This is the interest that PEC has in restricting competition after a retailer terminates an Agreement with PEC. Customers who wish to send packages use the service of PEC because it is conveniently located at a retail establishment with which they are already familiar. They are drawn in by the name recognition and goodwill of Athens Pharmacy and not PEC. Accordingly, it would be very difficult for PEC then to compete with Athens Pharmacy by setting up a service center in another retail location. We conclude this created a protectable interest for which PEC properly employed the use of a covenant not to compete. We agree with the Trial Judge that Athens Pharmacy breached this covenant not to compete when it continued to ship packages for its customers during the 18 months after the termination of its contract with PEC.

The Trial Court enjoined Athens Pharmacy from shipping further packages for a period of 18 months following the Court judgment. The Court also awarded damages for breach of the Agreement, and in issuing the injunction reasoned:

> In essence, the Pharmacy would be permitted to avoid the 18 month non-competition provision by merely ignoring it and paying only that which it was obligated to pay under the contract.

While the Complaint sought damages and an injunction, there is no indication that plaintiff ever attempted to obtain a temporary restraining order or injunction in accordance with Rule 65, T.R.C.P. The familiar equitable maxim, "equity aids the vigilant, not those who sleep upon their rights" is applicable here. *Gibson Suits in Chancery*, 6th Ed., Inman §25, p.28. Chancellor Inman observed, equity requires the party to assert his rights within a reasonable time after learning that he has been wronged. *Id.* The right to an injunction was not asserted within a reasonable time, and we reverse the Trial Judge on issuing the prospective injunction. Moreover, as a general rule, both injunctive relief and damages are not recoverable. *See Morrison v. Jones*, 430 S.W.2d 668, (58 Tenn. App. 33), Appeal After Remand 458 S.W.2d 434 (Tenn. 62 App. 50, 1968).

In this case, the Trial Court awarded damages based upon the amount of packages shipped by Athens Pharmacy from February 1995 through 1999 multiplied by the 45 cents that PEC received for each package under the original contract. The Trial Court also found that the "attempt to cancel the agreement was ineffective since it continued to ship packages using rates and proprietary information of plaintiff during the pendency of this litigation."

The Trial Court's decision to recognize the contract as continuing to be operational through the time of trial was in error. The Defendant clearly breached the Contract's covenant not to compete by continuing to ship packages.

An award of damages is meant to place the plaintiff in the same position he or she would have been had the contract been performed. *See Lamons v. Chamberlain*, 909 S.W.2d 795, 801 (Tenn. Ct. App. 1998). The correct measure of damages in this case is for the lost profits plus incidental damages for the 18 months following termination of the contact, as well as lost profits for an additional 60 days because the defendant failed to give the required 60 days notice when terminating the contract.

Accordingly, we vacate the Judgment awarding damages, and remand to the Trial Court to determine plaintiff's reasonable damages for breach of the Contract.

Finally, the Trial Court awarded attorney's fees to the plaintiff based in part on paragraph 7 of the Agreement. The Agreement provides that:

> 7. If Lessee should fail to pay as herein provided when the same shall be due, or if the Lessee shall commit a breach of any of its obligations hereunder, then Lessor shall (1) have the right to enter the Lessee's premises where the Equipment is located during business hours and remove the Equipment; (2) recover all sums due; (3) receive the sum of Two Hundred and 00/100 Dollars ($200.00) as a removal and inconvenience fee; (4) recover reasonable attorney's fees, court costs, and interest (10% A.P.R.) should it be necessary for the Lessor to commence legal action to collect sums due under this Lease.

Defendant contends that because he was current on his payments to PEC on February 6, 1995, he did not owe anything under the Agreement, and the Agreement only provides for attorney's fees where the legal action is commenced "to collect sums due under this Lease."

In the absence of a statutory provision or a contractual agreement between the parties, attorney fees, incurred by a litigant, are not a proper element of damages. *Morrow v. Bobbitt*, 943 S.W.2d 384, 392 (Tenn. Ct. App. 1996).

The Agreement provides for the recovery of attorney's fees should PEC have to bring a claim against the Defendant for the collection of "sums due under this Lease." Defendant contends that this applies only to the per package fee and similar ongoing monies due during the time when the Agreement is in effect and not those due after a breach. However, the Agreement provides that it is a breach of the contract for the defendant to compete for 18 months after termination and also provides that PEC may collect sums due as a result of any breach. Accordingly, PEC's action to collect damages for the breach of the covenant not to compete falls within the language of the Agreement and an award of attorney's fees is appropriate. In the light of our holdings in this case,

we find it appropriate to vacate the award of attorney's fees, however, and remand for the Court to set reasonable attorney's fees in accordance with the Contract, after assessing reasonable damages against defendant for the breach of contract.

The cost of the appeal is assessed one-half to the plaintiff and one-half to the defendant.

_____
HERSCHEL PICKENS FRANKS, J.